**TINGLEY SYSTEMS, INC., Plaintiff–Appellee–Cross–Appellant,**

v.

**NORSE SYSTEMS, INC., Defendant–Appellant–Cross–Appellee.**

Nos. 1775, 1965, Dockets 94–7037L, 94–7129XAP.

United States Court of Appeals, Second Circuit.

Argued Aug. 9, 1994.

Decided March 13, 1995.

William P. Gallagher, New Haven, CT, (Barbara L. Cox, Gallagher, Gallagher & Calistro, New Haven, CT, Bradley K. Cooney, Todd R. Bainer, Cooney & Bainer, Branford, CT, of counsel), for defendant-appellant-cross-appellee.

Peter Brown, New York City (Catherine M. McGrath, John C. Ohman, Brown, Raysman & Millstein, of counsel), for plaintiff-appellee-cross-appellant.

Before: WINTER and LEVAL, Circuit Judges, and SKRETNY, District Judge.*

LEVAL, Circuit Judge:

Appeals from a judgment of the United States District Court for the District of Connecticut. Plaintiff Tingley Systems, Inc. ("Tingley") and Norse Systems, Inc. ("Norse"), the Defendant and Counterclaim-Plaintiff, each appeal from the amended judgment. The case was tried before Jane R. Restani, Judge of the United States Court of International Trade, sitting by designation.

Tingley, a Florida corporation, and Norse, a Connecticut corporation, engage in the sale of computer hardware, software, and services. Their dispute arose from transactions related to their competition to sell for commission a large computer hardware upgrade to Aetna Healthcare Systems ("Aetna").

### Background

In 1987, Aetna began to consider upgrading certain computer systems. Aetna was then using Tingley software on its "Ultimate" brand hardware system; the license granted by Tingley to Aetna for the use of this software contained restrictions on permitted use. Aetna contacted Norse, Tingley, and other vendors for proposals on the upgrade.

Norse proposed a system manufactured by Sequoia Systems, Inc. ("Sequoia"). Aetna wished to perform a "benchmark" test of the Sequoia system to measure the hardware's performance. Without Tingley's authorization, Aetna made copies of its Tingley software to test on the Sequoia system.

After testing, Aetna decided to buy the Sequoia system. Initially, Aetna promised to pay Norse a vendor's commission of 16% of the net proceeds of the contract between Aetna and Sequoia. Later, however, Tingley was named as vendor in place of Norse.

Tingley maintains that Aetna violated the terms of its license agreement with Tingley by making unauthorized copies of the copyrighted Tingley software to use on the Sequoia system—and that Norse is liable for having induced Aetna's infringement of the Tingley copyright. Tingley brought suit against Norse claiming contributory copyright infringement and tortious interference.

Norse counterclaimed against Tingley alleging that Tingley interfered with Norse's business relationship with Aetna. Norse's counterclaim included claims of tortious interference, of violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn.Gen.Stat. § 42–110g(a), and of common law unfair competition.

The case was tried to a jury, which returned a verdict in favor of Norse and awarded damages in the aggregate amount of $1,610,500. This consisted of: $245,000 for tortious interference with Norse's business relations with Aetna, $115,500 for tortious interference with Norse's commission on the Sequoia sale, $1 million punitive damages

---

* The Honorable William M. Skretny, United States District Judge for the Western District of New York, sitting by designation.

under CUTPA, and $250,000 punitive damages for common law unfair competition.

On post-trial motions, the court vacated the $1 million CUTPA punitive damage award and substituted an award of $20,000, which, when added to $250,000 punitive award for unfair competition, resulted in aggregate punitive damages of $270,000. The court explained that although the parties had agreed to refer the issue of CUTPA punitive damages to the jury, the statute, CUTPA § 42–110g(a), reserved it for the court.[1] In the alternative, the court held that even if submission of the issue to the jury was not in error, "the award was excessive, not based on evidence, and no reasonable jury could reach this result."

The court also vacated $115,500 of compensatory damages on the claim of tortious interference with contract, as duplicative of the other interference award of $245,000. The final award to Norse was $515,000.

Norse appealed from the entry of the amended judgment, and Tingley cross-appealed.

### Discussion

1. *Punitive damages under CUTPA.* Norse contends the district court abused its discretion in reducing the $1 million punitive damages award.

▮ If a district court finds that a verdict is excessive, it may order a new trial, a new trial limited to damages, or, under the practice of remittitur, may condition a denial of a motion for a new trial on the plaintiff's accepting damages in a reduced amount. *Phelan v. Local 305 of the United Ass'n of Journeymen and Apprentices of the Plumbing & Pipefitting Indus.*, 973 F.2d 1050, 1064 (2d Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1415, 122 L.Ed.2d 785 (1993). It is not among the powers of the trial court, where the jury has awarded excessive damages, simply to reduce the damages without offering the prevailing party the option of a new trial. *See Vasbinder v. Scott*, 976 F.2d 118,

122 (2d Cir.1992) (where jury determination of punitive damages is set aside as excessive, court must order new trial unless plaintiff agrees to reduced award).

▮ However, in the present case, this option would have resulted in the same outcome. For, if the trial judge had granted a remittitur, Norse would have had the option of accepting the judge's reduced award of $20,000, or undergoing a second trial at which the judge, not the jury, would have set the CUTPA punitive damages. This is because, as noted above, CUTPA gives this function to the court. The final result for Norse would have been, either way, the reduction of the CUTPA punitive damage award from $1 million to $20,000. Thus, if it was procedural error for the court simply to reduce, rather than offer Norse a choice of retrial, this was error without consequence.

▮ We next turn to the merits of the trial court's decision to reduce the punitive damage award. The standard of review is abuse of discretion. *See Martell v. Boardwalk Enters., Inc.*, 748 F.2d 740, 750 (2d Cir.1984). Punitive damages may not be so high as to shock the judicial conscience. *Vasbinder*, 976 F.2d at 121.

▮ The trial court held that the $1 million punitive damages award under CUTPA was "excessive, not based on evidence, and no reasonable jury could reach this result." Given the lack of evidence to support such a high figure, including lack of evidence of Tingley's net worth, we believe the district court was within its discretion to deem it excessive.

While the purpose of CUTPA punitive damages is deterrence, *Bailey Employment Sys., Inc. v. Hahn*, 545 F.Supp. 62, 73 (D.Conn.1982), *aff'd*, 723 F.2d 895 (2d Cir. 1983), no evidence showed why the high figure of $1 million was necessary, or even appropriate, to serve this goal. Furthermore, the reduction of the award did not allow Tingley to escape without penalty; for the final judgment against Tingley awarded

---

1. CUTPA § 42–110g(a) provides in part:
   The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper.

See also *Associated Inv. Co. L.P. v. Williams Assocs. IV*, 230 Conn. 148, 645 A.2d 505, 508–09 (1994) (no right to jury trial under CUTPA).

Norse $270,000 in punitive damages. The district court's finding as to the excessiveness of the $1 million award was not an abuse of discretion.

■ Tingley also appeals from the award of punitive damages. First, it contends that punitive damages under CUTPA are limited to attorney's fees. In Connecticut, common law punitive damages are, indeed, limited to expenses of litigation less taxable costs. *Waterbury Petroleum Products, Inc. v. Canaan Oil & Fuel Co., Inc.,* 193 Conn. 208, 477 A.2d 988, 1003 (1984). Under CUTPA, however, punitive damage awards are not so limited. *See Associated Inv. Co. L.P. v. Williams Assocs. IV,* 230 Conn. 148, 645 A.2d 505, 511 (1994); *Freeman v. Alamo Management Co.,* 221 Conn. 674, 607 A.2d 370, 374 n. 6 (1992).

■ Tingley also maintains that under CUTPA there is a threshold requirement for punitive damages—that there be a *pattern* of deceptive practices—and that the isolated business dispute that gave rise to this litigation does not meet this requirement.

We do not agree that CUTPA punitive damage awards are limited to long-term practices. : *See Tessmann v. Tiger Lee Constr. Co.,* 228 Conn. 42, 634 A.2d 870, 876 (1993). In *Gargano v. Heyman,* 203 Conn. 616, 525 A.2d 1343 (1987), the Connecticut Supreme Court held that "a reckless indifference to the rights of others or an intentional and wanton violation of those rights" would justify an award of punitive damages. *Id.* 525 A.2d at 1347 (internal quotation omitted). In its special verdict, the jury found that Tingley's conduct demonstrated indifference to the rights of Norse, or an intentional and wanton violation of those rights.

As Tingley points out, in *Gibbs v. Southeastern Inv. Corp.,* 705 F.Supp. 738, 745 (D.Conn.1989), the district court declined to assess punitive damages, because the defendant's fraudulent actions were isolated and unique to the plaintiff. However, this federal district court opinion is not consistent with the rulings of the Connecticut Supreme Court cited above. Furthermore; in our view, the *Gibbs* court misinterpreted *Bailey* in citing it as authority for the proposition that CUTPA punitive damages are limited to

"'blatently [sic] intentional ... long term' practices rather. than unique acts practiced only upon [the plaintiff].'" *Id.* (quoting *Bailey,* 545 F.Supp. at 73). We read the discussion in *Bailey* as pointing to the defendant's long-term deceptive practices as a justification for, not a prerequisite to, imposition of punitive damages. We conclude that the award of punitive damages for an isolated business dispute was not in error.

2. *Compensatory damages.* Both sides make further challenges to the jury's verdict. We find they are without merit.

■ Norse appeals from the district court's setting aside of the $115,500 award for tortious interference with contractual relationship with Sequoia as duplicative with the award for $245,000 for tortious interference with business relationship with Aetna. Norse contends these damages were not duplicative and should each have been allowed. This claim is without merit. The money that would have been earned in the Sequoia commission was already included in the computation of the lost profits, for which Norse received $245,000. The tortious interference with the Sequoia commission was part of the larger tortious inference with Aetna.

■ Tingley claims that Norse's "lost profits" claim, on which it was awarded $245,000, was not proved, and should have been disallowed. It contends Norse failed to meet its burden of proving a connection between Tingley's. action and Norse's lost profits. We disagree.

■ An appellate court should sustain the jury's verdict unless the evidence, viewed most favorably to the party for whom the jury found, is incompatible with the verdict. *ARP Films, Inc. v. Marvel Entertainment Group, Inc.,* 952 F.2d 643, 651 (2d Cir.1991). In this case, there was sufficient evidence to support Norse's claim. Norse calculated the lost profits by determining the difference between Norse's expected annual profit for the period of June 1988 through June 1991 and its actual profit for the same period. The expected annual profit was based on Norse's historical revenues, averaged over an eighteen-month period preceding June 1988, minus representative expenses averaged for

98

the six months preceding June 1988. Norse explained that it used the different time periods because its revenues came in chunks, which needed to be averaged over a longer period of time. Norse claimed that Tingley's interference came at a crucial juncture and critically impaired Norse's future growth. The jury could reasonably have accepted Norse's calculations of the profits lost due to Tingley's interference with Norse's nascent business relationship with Aetna.

■ Tingley appeals from the rejection of its claim that Norse contributed to Aetna's infringement of Tingley's copyright. The jury found against this claim, and the trial court denied Tingley's motion for judgment as a matter of law on this issue.

The trial court instructed the jury that unless it found that Aetna used the software in a manner which exceeded the scope of its license from Tingley, and infringed Tingley's copyright, it could not find that Norse caused or contributed to the violation of Tingley's copyright.

In its special verdict, the jury answered "no" to the question: "Did Aetna ... the licensee of the Tingley software, use Tingley's copyrighted material in a manner which exceeds the scope of the Tingley license?" The jury instructions directed that unless Tingley proved an agreement with Aetna that Tingley software could only be used on the Ultimate machines, Tingley could not prevail on its copyright claim. Tingley did not introduce into evidence the complete license agreement. It failed to introduce any portion of that agreement specifying the equipment on which Aetna was authorized to run Tingley's programs. The jury was therefore within reason in finding that Tingley had failed to prove Aetna's breach of the license agreement. Tingley's claim is without merit.

We affirm the amended judgment of the district court.