**Deborah NORTHROP, Plaintiff–Appellant–Cross–Appellee,**

v.

**HOFFMAN OF SIMSBURY, INC. d/b/a Hoffman Honda of Avon, Defendant–Appellee–Cross–Appellant,**

**Larry F. Katzke, Defendant–Appellee–Cross–Appellant,**

**Hoffman of Simsbury, Inc., Plaintiff–Appellant–Cross–Appellee,**

v.

**Larry F. Katzke and American Honda Motor Co., Inc., Defendants–Appellees–Cross–Appellants.**

**Nos. 00–7575(L), 00–9055(L).**

United States Court of Appeals, Second Circuit.

June 14, 2001.

W. Philip Jones, Avon, CT, for plaintiff-appellant-cross-appellee.

Richard P. Weinstein, Weinstein & Wisser, P.C., West Hartford, CT, for Hoffman of Simsbury, Donald E. Frechette, Edwards & Angell, LLP, Hartford, CT, for Larry F. Katzke, for defendants-appellees-cross-appellants.

Richard P. Weinstein, Weinstein & Wisser, P.C., West Hartford, CT, for plaintiff-appellant-cross-appellee.

Donald E. Frechette, Edwards & Angell, LLP, Hartford, CT, for defendants-appellees-cross-appellants.

Present CABRANES, STRAUB, SACK, Circuit Judges.

### SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of said District Court be and it hereby is AFFIRMED in part, VACATED in part, and REMANDED.

We consider jointly two separate appeals arising out of a single judgment entered by the District Court after the two cases—*Northrop v. Hoffman of Simsbury* ("*Northrop*") and *Hoffman of Simsbury v.*

*Katzke* ("*Hoffman*")—were consolidated for trial. The facts underlying these cases are as follows. In July 1995, Mark Strauss was the business and finance manager of Hoffman of Simsbury ("Hoffman"), a car dealership. Strauss was authorized, in connection with prospective car sales by Hoffman, to obtain credit reports on prospective purchasers of cars from Trans Union. On or about July 3, 1995, Strauss requested and obtained Northrop's consumer credit report from Trans Union. Northrop had no business dealings with Hoffman that would have provided Strauss with a legitimate reason to obtain her credit report.

On September 25, 1995, Northrop applied to Mortgage Master for a mortgage to refinance the existing mortgage on her home. Northrop had a locked interest rate at 5.875% that would expire on November 1, 1995. Pursuant to the application process, Mortgage Master ran a credit check on Northrop, discovered Hoffman's credit check, and asked Northrop to explain the basis for Hoffman's inquiry. When Northrop inquired of Hoffman, she was informed that the relevant computer records had been destroyed. Subsequently, the locked interest rate on Northrop's mortgage application expired and she withdrew her application.

On January 19, 1996, Northrop initiated *Northrop* alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen.Stat. § 42–11a et seq.[1] According to Northrop, Larry Katzke—an employee of American Honda Motor Co. and a friend of Northrop's husband Noel Collier, against whom Northrop had initiated divorce proceedings—asked Hoffman, under false pretenses, to obtain her credit report in order to help Collier in his divorce action. Northrop alleged that Katzke's and Hoffman's actions interfered with her efforts to obtain a mortgage and caused her emotional distress and humiliation.[2]

On June 25, 1998, Hoffman initiated *Hoffman.* In its complaint, Hoffman alleged that on or about July 3, 1995, Katzke contacted Strauss and asked him to run a credit check on Northrop because she and her husband were considering purchasing a car. In requesting Northrop's credit report, therefore, Strauss acted pursuant to Katzke's request. Moreover, according to Hoffman, Katzke misrepresented the true reason for his request, resulting in damages to Hoffman including harm to its reputation, defense of the action commenced by Northrop and potential damages to Northrop. Accordingly, Hoffman sought $100,000 in damages plus reimbursement for all expenses incurred in connection with the Northrop litigation and any damages assessed against it.

A consolidated jury trial began on September 28, 1999.[3] On September 29, 1999, the jury returned a verdict awarding Northrop $100,000 in compensatory damages (divided evenly between Hoffman and Katzke), $500,000 in punitive damages (di-

---

1. Northrop's state claim is entirely premised on her federal claim since her complaint alleges, *inter alia,* that "the willful and wanton action of the Defendants in violation of federal statutes constitute unfair and/or deceptive trade practices as prohibited by [CUTPA]."

2. Northrop originally sued Jeffrey Hoffman, Hoffman's president, as well. He is not a party to this appeal.

3. The District Court initially granted defendants' motions to dismiss for failure to state a claim. However, in an opinion filed November 21, 1997, we vacated the District Court's dismissal and remanded. *See Northrop v. Hoffman of Simsbury, Inc.,* 134 F.3d 41 (2d Cir.1997).

vided evenly between Hoffman and Katzke), and nothing for emotional distress. With respect to *Hoffman,* the jury found that Hoffman had proved by a preponderance of the evidence that (1) Katzke made false representations to Hoffman; (2) Katzke intended to induce Hoffman to rely on his false representations; (3) Hoffman relied upon the false representations[4]; and (4) Hoffman suffered injury as a result of Katzke's actions. The verdict form asked the jury to write down an amount of "actual damages" to be awarded. When the jury first returned, it had entered the words "legal fees" in the blank space left for actual damages. The District Court instructed the jury to return to their deliberations and to enter a specific amount in damages. Thereafter, the jury entered "$25,000" in the appropriate space.

Following the verdict, with respect to *Northrop,* Hoffman and Katzke moved for judgment as a matter of law ("JMOL") under FED.R.CIV.P. 50(b) or, in the alternative, for a new trial or remittitur. Northrop moved for costs and attorneys' fees totaling $63,860.52. With respect to *Hoffman,* Katzke moved for JMOL, and Hoffman filed a motion for additur, asking the District Court to increase the damages awarded in its favor to the full amount of damages awarded against it in *Northrop* as well as full attorneys' fees.

In an unpublished Memorandum of Decision filed March 15, 2000, the District Court found, *inter alia,* that Northrop had provided no evidence at trial that Hoffman's credit check or her alleged inability to explain it to Mortgage Master had interfered with her ability to obtain her mortgage. Based on these findings, the

District Court granted Hoffman and Katzke JMOL with respect to compensatory damages under both FCRA and CUTPA. The Court concluded that "a reasonable jury could not find that Northrop [sic] proved by a preponderance of the evidence that Hoffman's credit report request interfered with her efforts to obtain a mortgage on her residence."

The District Court also reduced the punitive damages awarded by the jury to $50,000 against Hoffman and $75,000 against Katzke, ordering remittitur of the sums in excess of that award. The Court noted that although actual damages are not a prerequisite to punitive damages under FCRA, "[t]he plaintiff was unable to establish an actual compensatory loss." Moreover, it concluded that the jury's award of punitive damages, which it labeled "an advisory opinion," was excessive "in view of the fact that the content of the plaintiff's credit report was only verbally communicated to a single party, and in further view of the fact that there was no proof as to any unfavorable record being placed in the plaintiff's credit report."

Finally, the District Court awarded Northrop $54,962 in costs and attorneys' fees, to be split between Hoffman and Katzke.

In *Hoffman,* the District Court entered judgment in favor of Hoffman in the amount of $25,000. By an endorsement order, entered March 17, 2000, the District Court denied Hoffman's motion for additur.

Because the District Court's Amended Judgment misstated the damages in *Northrop,* the court entered a Second Amended Judgment on July 18, 2000. With respect to *Hoffman,* the court's Second

---

**4.** Interrogatory 9, which addresses reliance, is poorly written, obscuring which party is supposed to have relied on Katzke's misrepresentations, as follows: "Do you find that the plaintiffs, Hoffman of Simsbury and Jeffrey

Hoffman, have proven by a preponderance of the evidence, that Larry Katzke and/or American Honda, relied upon the false representations to the Hoffman plaintiffs?"

Amended Judgment ordered that Hoffman receive "$25,000 *in punitive damages.*" (emphasis added).

In the appeal before us of *Northrop,* Northrop challenges the District Court's grant of JMOL to Hoffman and Katzke insofar as it eliminated the jury's compensatory damages award and reduced the jury's punitive damages award. Northrop also appeals the Court's decision to grant her a lesser amount of costs and attorneys' fees than she requested. Hoffman cross-appeals, claiming that the District Court erred in denying it JMOL on liability and—in light of the fraud perpetrated by Katzke on Hoffman—allowing any punitive damages to stand against it, or, in the alternative, in failing to grant it a new trial. Defendant Katzke also cross-appeals, claiming that the District Court erred in not granting him JMOL on liability and punitive damages, and also claiming that the District Court erred in awarding Northrop any attorneys' fees.

In the appeal before us of *Hoffman,* Hoffman claims that the District Court erred in not increasing the jury's award to cover all of the damages assessed against Hoffman in *Northrop* as well as Hoffman's attorneys' fees. Katzke cross appeals, claiming (1) that the jury's award of legal fees must be reversed because, at trial, Hoffman abandoned all claims other than those for indemnification; (2) that the District Court's judgment converting the jury's award into punitive damages must be reversed; and (3) that Hoffman is not entitled to indemnification as it failed to prove the elements for indemnification under Connecticut law and, moreover, any relief sought would constitute an unconstitutional additur.

I. Compensatory Damages in *Northrop*

In ruling on a motion for JMOL, "the trial court is required to consider the evidence in the light most favorable to the party against whom the motion was made and to give that party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence. The court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury." *Tolbert v. Queens College,* 242 F.3d 58, 70 (2d Cir.2001) (internal quotation marks omitted). A district court may grant a judgment as a matter of law only if no reasonable jury could find for the non-moving party. *See Stagl v. Delta Air Lines, Inc.,* 117 F.3d 76, 79 (2d Cir.1997). We apply the same standard in reviewing the grant of a Rule 50(b) motion. *See Tolbert,* 242 F.3d at 70.

Northrop challenges the District Court's decision to eliminate compensatory damages on two grounds: First, she claims that the District Court erred in granting defendants JMOL on compensatory damages based on Rule 50(b) motions that raised different issues than had been raised in defendants' Rule 50(a) motions; and second, she claims that the District Court applied the wrong standard in striking the jury's award of compensatory damages. With respect to Northrop's first claim, we have noted that "[g]enerally a party is not entitled to [JMOL pursuant to Rule 50(b)] on any ground that he has not raised in a motion for a [JMOL pursuant to Rule 50(a)] ... and the [Rule 50(a)] motion must have 'state[d] the specific grounds therefor.'" *Smith v. Lightning Bolt Prods., Inc.,* 861 F.2d 363, 367 (2d Cir.1988) (quoting FED.R.CIV.P. 50(a)). "Relief from this requirement is only available to prevent a manifest injustice." *Baskin v. Hawley,* 807 F.2d 1120, 1130 (2d Cir.1986) (internal quotation marks omitted). However, "when the party moving for JMOL fails to articulate its motion with sufficient specificity, the non-moving

**50**

party must object in order to preserve the issue for appeal." *Marfia v. T.C. Ziraat Bankasi,* 147 F.3d 83, 87 (2d Cir.1998).

■ In the instant case, Northrop claims that the District Court erred in eliminating compensatory damages pursuant to defendants' Rule 50(b) motions when their Rule 50(a) motions, delivered orally to the District Court, raised only issues of liability and not issues of sufficiency of evidence with respect to damages. This argument is without merit. Northrop never objected to the specificity of defendants' motions before the District Court; accordingly, she did not preserve this matter for appeal. Moreover, each defendant's Rule 50(a) motion alleged that there was no evidence of any violation of FCRA or CUTPA. This is, in essence, the ground on which the District Court granted defendants' Rule 50(b) motions with respect to compensatory damages.

■ With respect to Northrop's second claim, the District Court applied the proper standard in considering JMOL ("a reasonable jury could not find that Northrop [sic] proved by a preponderance of the evidence that Hoffman's credit report request interfered with her efforts to obtain a mortgage"), and the District Court correctly concluded that plaintiff failed to adduce any evidence of "actual damages sustained as a result of [defendants'] activities," as required by FCRA. *Casella v. Equifax Credit Info. Servs.,* 56 F.3d 469, 473 (2d Cir.1995). In fact, asked directly at trial whether "the Hoffman inquiry cause[d] you to be denied a mortgage," Northrop responded "no." She added that "I could not respond to Mortgage Masters' question. I can't tell you where I was as far as the process goes." Accordingly, we affirm the District Court's grant of JMOL on the issue of compensatory damages.

## II. Punitive Damages in *Northrop*

■ At the time of the incident in question, section 1681n of FCRA permitted the award of "such amount of punitive damages as the court may allow" where "user[s] of information ... willfully fail to comply with any requirement imposed under [FCRA]." *Northrop I,* 134 F.3d at 47. To show willful noncompliance, a plaintiff must show that a defendant "knowingly and intentionally committed an act in conscious disregard for the rights of others, but need not show malice or evil motive." *Bakker v. McKinnon,* 152 F.3d 1007, 1013 (8th Cir.1998) (internal quotation marks omitted); *accord Cushman v. Trans Union Corp.,* 115 F.3d 220, 226 (3d Cir.1997); *Yohay v. City of Alexandria Employees Credit Union, Inc.,* 827 F.2d 967, 972 (4th Cir.1987). Actual damages are not a statutory prerequisite to punitive damages. *See Yohay,* 827 F.2d at 972 (citing authorities). Punitive damages are a question for the jury, subject to the court's duty to review excessive verdicts. *See Collins v. Retail Credit Co.,* 410 F.Supp. 924, 933–34 (E.D.Mich.1976); *see also Yohay,* 827 F.2d at 972.

■ On appeal, Northrop argues that the District Court misconstrued the statutory language permitting "such amount of punitive damages *as the court may allow*" to mean that the jury's punitive damages determination was merely "advisory" and, thus, that it erroneously reduced the amount of punitive damages awarded by the jury. We address the reduction of punitive damages below. On cross-appeal, each defendant argues that the District Court erred in not eliminating all punitive damages pursuant to Rule 50(b).

Construing all the evidence in the light most favorable to Northrop, and giving Northrop the benefit of all reasonable inferences that the jury might have drawn in

her favor from the evidence, we affirm the District Court's denial of JMOL to both Hoffman and Katzke. With respect to defendant Hoffman, a reasonable jury could have found that Strauss willfully violated Northrop's rights under FCRA by requesting her credit report even though he knew that his request was not connected with an automobile sale by Hoffman to Northrop—the only condition under which he was authorized to ask Trans Union to run a credit check. With respect to defendant Katzke, a reasonable jury could have found that he willfully violated Northrop's rights under the FCRA by asking Hoffman to run a credit check on Northrop, although Katzke knew (but did not communicate to Hoffman) that there was no legitimate reason to do so. Accordingly, we affirm the District Court's denial of JMOL to both defendants on punitive damages.

## III. Reduction of Punitive Damages and Remittitur in *Northrop*

When no constitutional challenge is raised, we review a district court's decision to reduce punitive damages for abuse of discretion. *See Cooper Indust., Inc. v. Leatherman Tool Group*, 532 U.S. 424, 121 S.Ct. 1678, 1684, 149 L.Ed.2d 674 (2001); *Tingley Sys. v. Norse Sys., Inc.*, 49 F.3d 93, 96 (2d Cir.1995). The purpose of punitive damages under FCRA and CUTPA is deterrence. *See Tingley*, 49 F.3d at 96; *Yohay*, 827 F.2d at 972. In *Tingley*, we affirmed the district court's reduction of a jury's award of punitive damages under CUTPA, noting that "no evidence showed why the high figure [awarded by the jury] was necessary, or even appropriate, to serve this goal," and "the reduction of the award did not allow [defendant] to escape without penalty." *Tingley*, 49 F.3d at 96. However, we also held that

[i]f a district court finds that a verdict is excessive, it may order a new trial, a

new trial limited to damages, or, under the practice of remittitur, may condition a denial of a motion for a new trial on the plaintiff's accepting damages in a reduced amount. It is not among the powers of the trial court, where the jury has awarded excessive damages, simply to reduce the damages without offering the prevailing party the option of a new trial.

*Id.* (internal citations omitted).

In the instant case, the District Court erred in reducing the damages without offering Northrop—who contests the reduction—the option of a new trial. Accordingly, we vacate the judgment of the District Court insofar as it ordered remittitur in accordance with its reduction of the jury's award of punitive damages, and remand this matter to the District Court to offer Northrop the option of a new trial and, if appropriate, to order a new trial or a new trial limited to damages.

## IV. Attorneys' Fees in *Northrop*

"Any person who willfully fails to comply with any requirement imposed" by the FCRA is liable "in the case of any successful action to enforce any liability under this section, [for] the costs of the action together with reasonable attorney's fees as determined by the court." 15 U.S.C. § 1681n(a) (formerly § 1681n(3)). We review a district court's determination of attorneys' fees for abuse of discretion, and are "highly deferential to the district court," recognizing that "the district court, which is intimately familiar with the nuances of the case, is in a far better position to make certain decisions than an appellate court, which must work from a cold record." *Matthew Bender & Co. v. West Publ'g, Co.*, 240 F.3d 116, 121 (2d Cir.2001) (internal quotation marks omitted).

We hold that the District Court did not abuse its discretion in awarding plaintiff attorneys' fees or in awarding her fees of an amount slightly less than she requested, pursuant to the Court's own calculations.

## V. *Hoffman* Appeal

On appeal, Hoffman unambiguously asserts that it makes "no claim of indemnification, but rather a claim for misrepresentation with the damages measured by indemnification." Accordingly, Hoffman argues that indemnification law—under which Katzke attacks its claim—does not control its common law fraud claim. Construing Hoffman's action as a common law fraud action, we vacate the judgment of the District Court granting Hoffman damages against Katzke since Hoffman produced no evidence of actual damages resulting from Katzke's misrepresentation, other than the cost of the punitive damages assessed against it in *Northrop. See Paiva v. Vanech Heights Constr. Co.*, 159 Conn. 512, 515, 271 A.2d 69 (1970) (holding that showing injury is an essential element of an action for fraud based on false representation). Since those punitive damages were based on Hoffman's willful conduct, there is no legal basis for requiring Katzke to repay Hoffman for that cost.

We have considered Hoffman's arguments on appeal, and find them to be without merit.

## VI. Conclusion

For the reasons set forth above, we hereby

(1) AFFIRM the judgment of the District Court (a) insofar as it granted JMOL to defendants Hoffman and Katzke on compensatory damages in *Northrop,* (b) insofar as it denied JMOL to defendants Hoffman and Katzke on punitive damages and liability in *Northrop,* and (c) insofar as

it granted Northrop attorneys' fees in *Northrop;*

(2) VACATE the judgment of the District Court (a) insofar as it reduced punitive damages and ordered remittitur with respect to defendants Hoffman and Katzke in *Northrop,* and (b) insofar as it granted damages to Hoffman in *Hoffman;* and

(3) REMAND for the District Court to offer Northrop a new trial in light of its reduction of punitive damages in *Northrop* and, if appropriate, to order a new trial solely on the issue of defendants' liability or damages thereon.