James Lamar **RILEY**, et al., Plaintiffs,

v.

**EQUIFAX CREDIT INFORMATION SERVICES, INC., et al.,**
**Defendants.**

**No. 00–835–BH–S.**

United States District Court,
S.D. Alabama,
Southern Division.

Jan. 29, 2002.

Richard D.C. Nix, Nix & Nix, Evergreen, AL, David A. Szwak, Bodnheimer, Jones & Szwak, Shreveport, LA, for Plaintiffs.

E. L. Robinson, II, Hand Arendall, L.L.C., Mobile, AL, Bradley J. Miller, Kilpatrick Stockton, LLP, Atlanta, GA, for Equifax Credit Information Services.

K.W. Michael Chambers, Adam T. Williamson, Mobile, AL, Thomas C. Smith, Brian A. Farlow, Jones, Day, Reavis & Pogue, Dallas, TX, Daniel McLoon, Jones, Day, Reavis & Pogue, Los Angeles, CA, for Experian Information Solutions, Inc.

George A. Tonsmeire, Mobile, AL, for Gulf Coast Credit Services, Inc.

George A. Tonsmeire, Mobile, AL, Joseph Fawal, Fawal & Spina, Birmingham, AL, Bruce S. Luckman, Philadelphia, PA, Timothy P. Creech, Satzberg, Trichon, Kogan & Werthheimer, Philadelphia PA, for Trans Union, LLC.

## ORDER

HAND, Senior District Judge.

This matter is before the Court on Defendant Trans Union's motion (Doc. 54) for summary judgment and brief (Doc. 55) in support, Plaintiffs' response (Doc. 78) and supporting affidavit (Doc. 79), and Trans Union's reply (Doc. 80) and supplemental brief (Doc. 83). Also pending are the Plaintiffs' motion (Doc. 84) to strike Trans Union's reply brief as "impertinent, scandalous, and clearly prejudicial," Plaintiffs' motion (Doc. 85) to file a sur-reply and attached brief (Doc. 86), and Trans Union's brief (Doc. 87) in opposition to the motions.

As to the summary judgment motion, for the reasons that follow, Trans Union's motion for summary judgment is **due to be GRANTED,** as the Plaintiffs' have failed to supply the Court with evidence entitling them to recover actual or punitive damages under the Fair Credit Reporting Act. As to the Plaintiffs' motions (Docs.84, 85) regarding Trans Union's reply brief, for the reasons stated in Trans Union's brief (Doc. 87), the motions are **due to be and are hereby DENIED.**

### I.  Background

In their response brief to Trans Union's motion for summary judgment, Plaintiffs chronicle a series of problems with Defendant Trans Union ("Trans Union"), stretching from July, 1994 to August, 2000.[1] (Doc. 1). Several of these problems are not actionable, as Plaintiffs filed this action on August 17, 2000, and the FCRA has a two-year statute of limitations.[2] *See* (Doc. 1) (complaint). In the

---

1. In their response (Doc. 78), Plaintiffs chronicle problems with Trans Union that occurred after August 17, 2000, the date on which this action was filed. However, as the Plaintiffs have not amended their complaint to add these problems to this action, they are not a part of this lawsuit, and the Court will not deal with them here.

2. The FCRA has a two-year statute of limitations. 15 U.S.C. § 1681p (2001). This limitations period runs from "the date on which the liability arises." *Id. See also Clay v. Equifax,* 762 F.2d 952 (11th Cir.1985), (applying the two-year limitation to bar a number of plaintiff's FCRA claims). This limitations period is tolled in cases where the defendant willfully misrepresented a material matter regarding the plaintiff's credit report, giving the plaintiff two years from the discovery of the willful misrepresentation. *Id.* Courts are divided on which is "the date on which liability arises," as between (1) the date that the credit agency breached its FCRA duty (*See Williams v. Colonial Bank,* 826 F.Supp. 415, 417 (M.D.Ala.1993)), or (2) the date on which the credit agency's breach caused some actual harm to the consumer (*See Hibernia Nat. Bank in Jefferson Parish,* 861 F.2d 446, 446 (5th Cir.1988), *cert. den.,* 491 U.S. 910, 109 S.Ct. 3199, 105 L.Ed.2d 706 (1989)). However, this Court need not decide on which of these dates to accept, as, under any reading of "the date on which the liability arises," it is clear which of the Plaintiffs' alleged problems with Trans Union are time-barred and which are not. In other words, no statute-of-limitations call is so close that the Court needs to

interest of brevity, the Court will only discuss the problems that are not clearly time-barred, and will not rehash all the details of the Plaintiffs' interactions with Trans Union, which are laid out chronologically in the Plaintiffs' response (Doc. 78).

Plaintiffs allege that Trans Union breached several of its FCRA duties: (A) the § 1681e(a) duty to maintain reasonable procedures to assure that consumer reports are furnished for permissible purposes, (A) the § 1681g(c)(1)(B) duty to provide a toll-free number which consumers can use to contact the reporting company during normal business hours, (C) the § 1681e(b) duty to follow reasonable procedures to assure maximum possible accuracy in preparing a consumer report, and (D) several of the duties imposed by various sub-parts of § 1681i, the provision setting up the consumer-agency dispute procedure. The Plaintiffs filed their complaint against four credit reporting agencies, Trans Union and three others. The other three Defendants have settled with the Plaintiffs, but, as the Plaintiffs did not specify in their complaint which Defendants breached which duties, the Court must compare all the alleged breaches with the problems Plaintiffs attribute to Trans Union. Accordingly, the Court will examine each statutory duty and the facts that relate to each, one by one, and then turn to the Plaintiffs' claim for punitive damages, which Trans Union challenges in its motion for summary judgment.

## II. Legal Standards

### A. Summary Judgment

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

hone in on the precise triggering day of the

Fed.R.Civ.P. 56(c). "A factual dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Technologies, Inc.*, 882 F.2d 993, 996 (5th Cir.1989) *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The issue before the Court on a motion for summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law. *See Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505. "[T]he moving party has the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodge[s]," and all factual inferences arising from it, must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir.1989). Where the nonmoving party, as here, bears the burden of proof at trial, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the District Court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the movant satisfies its initial burden under Rule 56(c) of demonstrating the absence of a genuine issue of material fact, the burden shifts to the defending party to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348,

limitations period.

89 L.Ed.2d 538 (1986) (quoting Fed. R.Civ.P. 56(e)) (emphasis removed) (internal quotation marks omitted). Otherwise stated, the nonmovant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). Shifting the burden from movant to nonmovant at summary judgment described above applies regardless of which party will bear the burden of proof at trial. *See id.* at 607. "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (citation omitted). The moving party is likewise entitled to judgment as a matter of law when the nonmoving party fails to show sufficiently an essential element of the case as to which the nonmoving party has the burden of proof. *See Peppers*, 887 F.2d at 1497; *Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 636 (11th Cir.1991).

### B. The Fair Credit Reporting Act

The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 (2001), *et seq.*, was "a product of political compromise enacted for the specific purpose of curbing only the worst abuses by the credit reporting industry and its clients" *Henry v. Forbes*, 433 F.Supp. 5, 9 n. 5 (D.Minn.1976) (holding that the FCRA does not cover the procuring of information about persons not involved in consumer transactions). Congress nationally standardized the legal duties that credit reporting agencies owed to consumers, placing on agencies, for example, the duties to act reasonably to avoid furnishing credit reports for improper purposes, § 1681e(a), to act reasonably to only issue accurate credit reports, § 1681e(b), and to comply with a statutory process for resolving disputes between consumers and credit agencies, § 1681i.

Congress gave consumers a private right of action in federal court, § 1681p, for a reporting agency's breaching these duties negligently, § 1681o, or willfully, § 1681n. If the consumer successfully proves a negligent breach he can recover his actual damages and reasonable attorney's fees. § 1681o. If the breach was done willfully, the consumer can recover actual damages "of not less than $ 100 and not more than $ 1,000," as well as punitive damages as the court may allow, and reasonable attorney's fees. § 1681n.

For a consumer to recover actual damages, the consumer can show either out-of-pocket losses, or evidence of humiliation or mental distress, or both. *Cousin v. Trans Union Corp.*, 246 F.3d 359, 370, n. 15 (5th Cir.2001) (reversing jury award under § 1681e(b) as a matter of law because the plaintiff failed to show sufficient evidence of actual damages). *See also Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 474 (2nd Cir.1995), *cert. denied*, 517 U.S. 1150, 116 S.Ct. 1452, 134 L.Ed.2d 571 (1996) (collecting cases that show that under the FCRA, " 'actual damages' may include humiliation and mental distress, even in the absence of out-of-pocket expenses"). To make out a cause of action for actual damages, the damages must be attributable to the defendant. *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir.2001) ("Without a causal relation between the violation of the statute and the loss of credit, or some other harm, a plaintiff cannot obtain an award of 'actual damages' "). *See also Casella*, 56 F.3d at 474 (affirming summary judgment for defendants where plaintiff failed to show that his mental distress was caused by defendants' action).

A claim for mental distress damages must be supported by something

more than the plaintiff's own conclusory allegations. Support can come from the surrounding circumstances or other "evidence of genuine injury, such as the evidence of the injured party's conduct and the observations of others." *Cousin,* 246 F.3d at 371, (where the plaintiff's own testimony that he felt "[v]ery upset, angry," "like nobody was listening," and "like being trapped inside of [a maze that he] can't get out of" were legally insufficient to establish emotional distress damages under the FCRA, where these allegations were not given with " 'a degree of specificity which may include corroborating testimony or medical or psychological evidence in support of the damage award." ') *quoting Patterson v. P.H.P. Healthcare Corp.,* 90 F.3d 927, 940 (5th Cir.1996), *cert. denied,* 519 U.S. 1091, 117 S.Ct. 767, 136 L.Ed.2d 713(1997) (applying to Title VII emotional-distress claims the Supreme Court's *Carey v. Piphus,* 435 U.S. 247, 264 n. 20, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) requirement of proof of actual injury for mental or emotional distress compensatory damages in a 42 U.S.C. § 1983 action). *Accord Wilson v. Taylor,* 733 F.2d 1539 (11th Cir.1984) (reducing an jury award of $100,000 for emotional distress to $5,000 in a § 1983 case, where the evidence of emotional distress showed that the "injuries were slight:" plaintiff testified that "he felt frustration, anger, humiliation, and embarrassment because of the way he was fired" and presented other witnesses that testified that he was " 'very down and out," ' " 'very, very upset, very distressed, emotionally upset, emotionally disturbed, very volatile, [and] angry," ' but did "not discuss nor relate any extreme emotional damage or injury incurred because of the manner in which he was terminated") *overruled on other grounds, Scala v. City of Winter Park,* 116 F.3d 1396 (11th Cir.1997).

▮ Punitive damages are also recoverable under the FCRA, even in the absence of actual damages. *Northrop v. Hoffman of Simsbury, Inc.,* 12 Fed.Appx. 44, 50 (2nd Cir.2001) ("Actual damages are not a statutory prerequisite to punitive damages") *citing Yohay v. City of Alexandria Employees Credit Union, Inc.,* 827 F.2d 967, 972 (4th Cir.1987) ("award of punitive damages in the absence of any actual damages, in an appropriate case, comports with the underlying deterrent purpose of the FCRA"). *Accord TRW, Inc. v. Andrews,* 534 U.S. 19, 122 S.Ct. 441, 451, 151 L.Ed.2d 339 (U.S.2001) (in dicta, stating: "Punitive damages, which [plaintiff] sought in this case, could presumably be awarded at the moment of TRW's alleged wrongdoings, even if 'actual damages' did not accrue at that time."). To be entitled to punitive damages in an FCRA case, the plaintiff must demonstrate that the defendant "wilfully failed to comply with any requirement imposed under" the FCRA. § 1681n. The Fifth Circuit recently explained: to show that a defendant's conduct was "willful," the plaintiff need not show "malice or evil motive," but must show that "the agency 'knowingly and intentionally committed an act in conscious disregard for the rights of others." ' *Cousin v. Trans Union Corp.,* 246 F.3d 359, 372 (5th Cir.2001) *quoting Fischl v. General Motors Acceptance Corp.,* 708 F.2d 143, 151 (5th Cir.1983) *and Pinner v. Schmidt,* 805 F.2d 1258, 1263 (5th Cir. 1986). The Fourth Circuit, in applying the same " 'conscious disregard for the rights' of the consumer" standard, has noted that "summary judgment is 'seldom appropriate' on whether a party possessed a particular state of mind." *Dalton v. Capital Assoc. Indus., Inc.,* 257 F.3d 409, 418 (4th Cir.2001) (but holding that summary judgment was appropriate on the willfulness issue where "evidence that [the credit reporting agency] acted willfully [was] wholly lacking") *citing Magill v. Gulf & W. Indus., Inc.,* 736 F.2d 976, 979 (4th Cir. 1984).

## II. Plaintiffs' FCRA Claims

As mentioned above, Plaintiffs allege negligent and willful breaches of four of Trans Union's FCRA duties: (A) the § 1681e(a) duty to maintain reasonable procedures to assure that consumer reports are furnished for permissible purposes, (B) the § 1681g(c)(1)(B) duty to provide a toll-free number which consumers can use to contact the reporting company during normal business hours, (C) the § 1681e(b) duty to follow reasonable procedures to assure maximum possible accuracy in preparing a consumer report, and (D) several of the duties imposed by various sub-parts of § 1681i, the provision setting up the consumer-agency dispute procedure.[3] Plaintiffs claims that Trans Union breached the first two duties fail, as Plaintiffs have failed to produce any evidence that Trans Union breached these duties. Plaintiffs final two claims also fail, but for two other reasons: first, they fail to produce any evidence of actual damages in response to the Defendant's motion, and they fail to produce adequate evidence of wilful misconduct to survive summary judgment with their claim for punitive damages. The Court will deal with each claim in turn.

*A. Plaintiffs' Claim that Trans Union Breached its § 1681e(a) Duty to Maintain Reasonable Procedures to Assure that Consumer Reports are Furnished for Permissible Purposes*

In its summary judgment motion and supporting brief, Trans Union asserts that all the Plaintiffs' factual bases for a claim that Trans Union breached its § 1681e(a) duty are time-barred as occurring before August 17, 1998. (Doc. 55, p. 5). The

Plaintiffs do not dispute this assertion in their response, nor do they offer any allegations of § 1681e(a) breach occurring after August 17, 1998. Accordingly, as to Plaintiffs' claim of Trans Union's breaching its § 1681e(a) duty, Trans Union's motion for summary judgment is **due to be GRANTED.**

*B. Plaintiffs' Claim that Trans Union Breached its § 1681g(c)(1)(B) Duty to Provide a Toll–Free Number*

■ In their complaint, the Plaintiffs allege that one of the Defendants breached its duty, under § 1681g(c)(1)(B) to provide a toll-free number which consumers can use to contact the reporting company during normal business hours. *See* Complaint ¶ 10, *attached at* (Doc. 1). However, Plaintiffs do not specify in their complaint which Defendant they allege breached this duty. In its brief in support of its motion for summary judgment, Trans Union argues that this claim, as against Trans Union, is "completely frivolous," pointing to Trans Union documents that the Plaintiffs themselves produced which contained the number. *See, e.g.,* (Doc. 78, Exhibit 17) (consumer report for James Riley issued by Trans Union, containing a toll-free number). Plaintiffs, in response, produce no evidence to refute this argument. Thus, as to the 15 U.S.C. § 1681g(c)(1)(B) breach, Trans Union's motion for summary judgment is **due to be GRANTED.**

*C. Plaintiffs' Claim that Trans Union Breached its § 1681e(b) Duty to Follow Reasonable Procedures to Assure Maximum Possible Accuracy in Preparing a Consumer Report*

Plaintiffs' claim under this subsection fails because the Plaintiffs have failed to

---

**3.** The Plaintiffs filed their complaint against four credit reporting agencies, Trans Union and three others. The other three Defendants have settled with the Plaintiffs, but, as the Plaintiffs did not specify in their complaint which Defendants breached which duties, the Court must compare all the alleged breaches with the problems Plaintiffs attribute to Trans Union.

produce any evidence of actual damage from Trans Union's failure to act reasonably to maintain maximum possible accuracy, and because the Plaintiffs have failed to present any evidence that Trans Union willfully breached this duty.

At the outset, the Court notes that the Plaintiffs may have failed to produce any proper evidence of what they complain of. The only "specific facts" that the Plaintiffs have "come forward with," are mixed into their response brief, along with the arguments of their attorney and factual allegations that they could have no personal knowledge of, such as internal operations and procedures at Trans Union, allegations of conspiracy among the credit reporting companies, and interpretations of Trans Union's internal documents. *Matsushita Elec. Indus.*, 475 U.S. at 586–87, 106 S.Ct. 1348. They then confirm everything in the response brief with an affidavit (Doc. 79). The Court has no problem with a document cataloguing factual allegations and a separate affidavit confirming the document, as long as all of the factual allegations in the document can be affirmed by the affiant. But here, all the allegations cannot possibly be affirmed by the Plaintiffs, as many happened completely outside the Plaintiffs' sphere of personal knowledge, some are apparently surmised from what the Plaintiffs knew, and others appear to be simply attorney argument. However, giving the Plaintiffs every benefit of any doubt as to the propriety of their "evidence," the Court will not rest its holding today on this evidentiary mishap. Instead, the Court will accept the facts affirmed in response brief which the Plaintiffs ostensibly could have personally known, and rest its holding on the absence of any evidence of actual damage to the plaintiff, and the absence of

sufficient evidence to support a claim for punitive damages.

In its brief in support of its motion for summary judgment, Trans Union demonstrated that there were no genuine issue of material fact regarding the Plaintiffs' claim for actual damages. The parties' discovery revealed that the actual damages that the Plaintiffs were seeking did not relate to any breach by Trans Union. Trans Union's brief addressed one out-of-pocket loss, a credit denial from the National Bank of Commerce ("NBC"), and two allegations of emotional distress damages: (1) they were "humiliated into explaining every detail of [his life] and credit history," in connection with a loan application at the Colonial Bank ("Colonial") in Evergreen, Alabama, and (2) Plaintiff James Riley's statement that being denied credit "upsets [him] to no end." *See* (Doc. 55, Exhibit A, Deposition of James Lamar Riley, p. 138, 140–41; Exhibit E, Plaintiffs' answers to interrogatories, # 11). Trans Union demonstrated that these damages either were not caused by a Trans Union consumer report, or were not caused by any inaccuracies in a Trans Union consumer report. In response, the Plaintiff have not come forward with more than a scintilla of evidence refuting Trans Union's assertion that judgment as a matter of law is proper.

▮▮▮ In support of its motion, Trans Union demonstrated that the out-of-pocket loss was not based on a faulty credit report issued by Trans Union. The NBC denial was based solely on Jane Riley's credit report, which contained no inaccurate information.[4] *See* (Doc. 80 and attached Exhibit A) (affidavit and deposition excerpt from Virgil Roberts, NBC's representative, stating that there is no record of NBC's consulting James Riley's credit re-

---

4. To "make out a *prima facie* violation of [15 U.S.C.] section [1681e(b)], the Act implicitly requires that a consumer must present evidence tending to show that a credit reporting agency prepared a report containing 'inaccurate' information." *Cahlin*, 936 F.2d at 1156.

port in evaluating whether the Plaintiffs were creditworthy). Plaintiffs respond to this by alleging that Jane Riley's Trans Union report which NBC relied on contained "false data," which they had previously disputed. *See* (Doc. 78, p. 5) *and* (Doc. 79, Plaintiffs' affidavit affirming every fact in the Plaintiffs' response brief). However, other than this bald assertion of "false data," Plaintiff Jane Riley makes no attempt to point out what particular piece of data on her consumer report might be false, nor does she detail any time when she disputed any piece of data in her Trans Union file, despite her assertion that the "false data" was "previously disputed." *Id.* These bald and conclusory allegation that this consumer report contained false data, without any other supporting evidence, is insufficient to show an inaccuracy in Jane Riley's credit report. Thus, any damage that flowed to the Plaintiffs from NBC's denying their loan application cannot be attributed to Trans Union's breaching its § 1681e(b) duty.

Likewise, Trans Union pointed to James Riley's own testimony to show that the Colonial situation, in which Mr. Riley was "humiliated into explaining every detail of [his life] and credit history" to a bank with which he had a longstanding business relationship, and where he knew personally each member of the bank's board of directors, was attributable only to Equifax[5] and not to Trans Union. *See* (Doc. 55, Exhibit A, p. 138–43; Exhibit E, # 11). Plaintiffs offer no evidence to show that any action by Trans Union caused the Colonial Bank humiliation.

■ Finally, Mr. Riley's statement that being denied credit "upsets [him] to no end," cannot be the basis for an actual damages claim against Trans Union for two reasons. (Doc. 55, Exhibit A, pp. 140–41). First, it cannot be the basis of a claim

against Trans Union because Mr. Riley has shown no evidence that he was denied credit based on a Trans Union report. Second, it is legally insufficient to be the basis of a claim against any defendant because it is an imprecise and conclusory statement. It offers neither " 'a degree of specificity which may include corroborating testimony or medical or psychological evidence in support of the damage award,' " nor "evidence of genuine injury, such as the evidence of the injured party's conduct and the observations of others." *Cousin,* 246 F.3d at 371. For these two reasons, Mr. Riley's statement does not provide evidence of actual damages to the Plaintiffs.

■ To these three bases of actual damages which Trans Union addressed in its brief, the Plaintiff added two more credit denials in its response brief to support a claim for actual damages. However, these two fail too. First, Plaintiffs claim that they were denied a loan by Chrysler Financial Company, LLC in October, 1999, pursuant to a loan application they had submitted at a Dodge dealership. (Doc. 78, p. 25). They attribute the denial to a Trans Union consumer report. However, the Plaintiffs provide the Court with no evidence, other than their own affidavit affirming the response brief, that Chrysler Financial based its decision on a Trans Union report, or that Chrysler Financial's decision turned on a inaccurate information in any report. Plaintiffs could not possibly have personal knowledge of what Chrysler Financial based its decision on, so their affidavit cannot support their linking this denial to a Trans Union report. Thus, this denial provides no basis for actual damages.

---

**5.** Equifax is another credit reporting agency, a competitor of Trans Union. Equifax was a

party to this litigation, but has been released pursuant to a settlement with the Plaintiffs.

■ Second, Plaintiffs claim that in June, 2001, Bank of the West, denied Plaintiffs' application for credit because of the Plaintiffs' "excessive credit obligations" which were, the Plaintiffs allege, inaccurately attributed to both Plaintiffs in a Trans Union consumer report. (Doc. 78, p. 26). However, this denial is not properly the subject of this lawsuit: it could not have been included in the complaint which was filed August 17, 2000 (*See* Doc. 1), with the deadline for amending the pleadings passing February 1, 2001 (*See* Doc. 18, ¶ 5), and Plaintiffs have made no attempt to amend their complaint to include this credit denial. Therefore, this denial also provides no basis for actual damages.

■ The Plaintiffs' claim for punitive damages, as they might relate to a claim of a willful breach of § 1681e(b), fail also. A plaintiff can recover punitive damages in the absence of actual damages on a showing that a defendant willfully breached its § 1681e(b) duty. However, here, the Plaintiffs have provided the Court with no evidence that Trans Union " 'knowingly and intentionally committed an act in conscious disregard for" ' the Plaintiffs' § 1681e(b) rights. *Cousin*, 246 F.3d at 372. As in *Dalton v. Capital Assoc. Indus., Inc.*, 257 F.3d 409, 418 (4th Cir.2001), summary judgment as to the Plaintiffs' claim for punitive damages under § 1681e(b) is appropriate, because "evidence that [Trans Union] acted willfully is wholly lacking."

For these reasons, as to Plaintiffs' claims for actual and punitive damages under § 1681e(b), Trans Union's motion for summary judgment is **due to be GRANTED.**

D. *Plaintiffs' Claim that Trans Union Breached Several of Its § 1681i Duties, Regarding the Consumer–Agency Dispute Procedure*

Finally, Plaintiffs bring a claim for Trans Union's breaching § 1681i. This section requires the consumer reporting agency to reinvestigate and record the current status of any information that a consumer disputes as to the information's completeness or accuracy. *Williams v. Colonial Bank*, 826 F.Supp. 415, 418 (M.D.Ala.1993).

Here, the Plaintiffs cannot recover any actual damages for a § 1681i breach simply because they have not alleged any, nor provided evidence of any.

■ As to punitive damages, plaintiffs argue, in their response brief, that Trans Union willfully breached its § 1681i duty by refusing to send copies of the Plaintiffs' credit files, in response to Plaintiffs' letter requesting the files. Specifically, Plaintiffs allege that Trans Union stalled the § 1681i investigation process by requesting additional identifying information of the Plaintiffs. Plaintiffs premise this allegation on (1) the text of three form letters they received from Trans Union, (2) their attorney's interpretation of Trans Union's internal documents, unsupported by verifying evidence, and (3) their attorney's assertion of what the "known purpose" of these form letters is. (Doc. 78, Exhibits 39–41). Only the first premise is acceptable evidence for the Plaintiffs to affirm, and so the Court can only consider the first premise, the form letters that Trans Union sent to the Plaintiffs in deciding whether the Plaintiffs have provided sufficient evidence of a willful § 1681i breach. These form letters, which request that the Plaintiffs provide additional identifying information, when taken with (1) Trans Union's duty under § 1681a to verify the identity of credit-report users to whom they send reports and (2) the lack of any evidence that Trans Union refused to provide the Plaintiffs with copies of their credit files once the Plaintiffs sent the additional proof of identification, are legally insufficient to show that Trans Union "knowingly and inten-

tionally committed an act in conscious disregard for the rights of others." *Pinner v. Schmidt*, 805 F.2d 1258, 1263 (5th Cir. 1986) (vacating a jury's award of punitive damages under the FCRA as the award lacked any evidentiary support, contrasting the case before the court with *Millstone v. O'Hanlon Reports, Inc.*, 528 F.2d 829, 834 (8th Cir.1976), where the court found punitive damages to be proper when the credit reporting agency sought at every step to block the consumer in his attempts to exercise his rights under the FCRA, mislead the consumer about the contents of his credit file on three separate occasions, issued reports that were "rife with innuendo, misstatement, and slander," and did not reveal the contents of the credit file until the commencement of litigation), *reh'g and reh'g en banc denied*, 812 F.2d 1405 (5th Cir.1987), *cert. denied*, 483 U.S. 1022, 107 S.Ct. 3267 (1987).

■ As for any contention that the Plaintiffs might have made regarding Trans Union's willfully refusing to purge their credit report of inaccurate, disputed information, Plaintiffs claim for punitive damages fails. This is because the Plaintiffs have failed to show a refusal-to-investigate-and-purge breach of § 1681i at all. As Trans Union's reply brief clarifies, the only dispute letter that the Plaintiffs sent to Trans Union during the time window framed by the statute of limitations and the Plaintiffs' filing their complaint resulted in Trans Union removing all derogatory entries from Mr. Riley's file. *See* (Doc. 80, pp. 9–10). Thus, once the Plaintiffs asked Trans Union for what they wanted-for all inaccurate, derogatory information to be removed from their file-they got it. As such, Trans Union cannot be said to have wilfully breached § 1681i in this regard. Accordingly, punitive damages are inappropriate.

For these reasons, as to Plaintiffs' claims for actual and punitive damages

under § 1681i, Trans Union's motion for summary judgment is **due to be GRANTED.**

### III. Conclusion

For the reasons above, Trans Union's motion for summary judgment is **due to be and is hereby GRANTED.**