RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0202p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

TINA C. WALLACE,

       *Plaintiff-Appellant/Cross-Appellee,*

    *v.*

FEDEX CORPORATION,

       *Defendant-Appellee/Cross-Appellant.*

Nos. 11-5500/5577

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 2:08-cv-2145—No. 2:08-cv-2145.

Argued: May 7, 2014

Decided and Filed: August 22, 2014

Before: COLE, Chief Judge; MOORE, Circuit Judge; DRAIN, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Alistair E. Newbern, VANDERBILT APPELLATE LITIGATION CLINIC, Nashville, Tennessee, for Appellant/Cross-Appellee. M. Kimberly Hodges, FEDEX CORPORATION, Memphis, Tennessee, for Appellee/Cross-Appellant. **ON BRIEF:** Alistair E. Newbern, VANDERBILT APPELLATE LITIGATION CLINIC, Nashville, Tennessee, for Appellant/Cross-Appellee. M. Kimberly Hodges, David A. Billions, FEDEX CORPORATION, Memphis, Tennessee, for Appellee/Cross-Appellant. Tina C. Wallace, Collierville, Tennessee, pro se.

_____

[*]The Honorable Gershwin A. Drain, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

_____

**OPINION**

_____

KAREN NELSON MOORE, Circuit Judge.   Plaintiff-Appellant/Cross-Appellee Tina Wallace worked for Defendant-Appellee/Cross-Appellant FedEx Corporation ("FedEx") for twenty-one years in a variety of positions.  By 2007, she was a senior paralegal.  By the summer of 2007, Wallace also had a variety of health problems that required her to take leave from her position.  FedEx offered Wallace leave under the Family and Medical Leave Act ("FMLA"), and its representatives verbally asked her to complete a medical-certification form.  FedEx, however, never explained the consequences of not returning a completed form.  Wallace failed to provide FedEx with the medical certification, and once she was absent for two consecutive days after the form was due, FedEx terminated her employment.  Wallace filed suit under the FMLA, alleging that FedEx interfered with her rights under the statute.  A magistrate judge dismissed Wallace's request for liquidated damages and front pay, but after a trial, the jury sided with Wallace on the issues of liability and back pay, awarding damages in the amount of $173,000.  Both parties filed post-judgment motions, and the magistrate judge denied all of them, except to reduce Wallace's damages award to $90,788.

Wallace appealed the magistrate judge's decisions on liquidated damages, front pay, and remittitur.  FedEx cross-appealed, challenging the magistrate judge's denial of its motion for judgment as a matter of law on liability, making several different arguments.  On December 14, 2011, a motions panel of this court dismissed Wallace's appeal of the liquidated-damages and front-pay decisions as untimely under Federal Rule of Appellate Procedure 4.  This decision was clearly erroneous under binding circuit precedent, but we may not revisit it three years later. Therefore, we review only the parties' arguments related to the magistrate judge's March 24, 2011 order.  On the merits, we **REVERSE** the magistrate judge's remittitur decision and **ORDER** the magistrate judge to enter judgment in favor of Wallace in the amount of $173,000. With regard to FedEx's cross-appeals, we **AFFIRM** the magistrate judge's denial of judgment as a matter of law on all issues.

## I.  BACKGROUND

**A.  Facts**

Wallace started working for FedEx in 1986 as a part-time package handler.  She stayed with the company, moving eventually into the legal department in 1993 as an associate paralegal.  On June 1, 2007, Wallace transferred as a senior paralegal into the Legal Sales and Alliance Group, which was supervised by Rusty Phillips.  Wallace shifted into this group, in part, because of a variety of health problems.  Knowing this information, Phillips had a conversation with Wallace prior to her joining his group, highlighting the importance of adhering to the scheduled workday—9:00 a.m. to 6:00 p.m.—to support the sales staff on the West Coast.

During the summer of 2007 as this transfer took place, Wallace was also suffering from temporomandibular joint disorder, known as "TMJ," which resulted in severe headaches, facial pain, chest pains, "significant weight loss," and sleeping problems.  R. 53 at 130:16–19, 132:17–24 (Mar. 29 Trial Tr.) (Page ID #1587, 1589).  Dr. Christine Kasser, Wallace's physician, had prescribed "Synthroid, Adderall, Prozac, Wellbutrin, Lortab, Subutex, Klonopin, and Ambien" to treat this condition.  *Id.* at 133:22–23 (Page ID #1590).  The prescriptions helped some, but Wallace continued to have sleep issues and stomach problems.  In late July 2007, Wallace started arriving at work late, which prompted Phillips to email Wallace, stressing the importance of arriving to work on time.  *See id.* at 168:5–24 (Page ID #1625); Ex. App'x at 56.  Wallace apologized for "slacking" and "promise[d] to everyday, try to strive with 100% dedication and determination to get [to work] at or before 9:00."  Ex. App'x at 57.

Wallace's health and attendance problems worsened after Dr. Kasser adjusted Wallace's Lortab prescription on Friday, August 3.  R. 53 at 167:15–17 (Mar. 29 Trial Tr.) (Page ID #1624).  Lortab is a narcotic, and Wallace and her doctor decided to discontinue its use.  *Id.* at 134:5–14 (Page ID #1591).  This process had rather drastic side effects.  Wallace experienced "ringing in [her] ears," "night sweats," and "headaches"; she "felt like [she] was in a fog," and "[her] skin was all crawly feeling."  *Id.* at 134:10–14 (Page ID #1591).  She could not sleep and had diarrhea.  *Id.*  As a result, "getting up" in the morning and "getting to work" were difficult.  *Id.* at 134:17–21 (Page ID #1591).  At times, when she arrived at work, she "would sit in the parking lot and cry" or "go in to the building and . . . cry."  *Id.* at 134:20–23 (Page ID #1591).

On Monday, August 6, Wallace emailed Phillips with the subject line "not sure what to do":

> Rusty, because of my "past/baggage/history, etc." I have struggled with whether I should or shouldn't let you know something; but because of the same reasons I really feel and think I should, but also shouldn't because of how it will or will not be taken/understood.

Ex. App'x at 15.    Phillips responded that he thought "keeping an open, honest line of communication open [was] critical to a successful transition [to Wallace's new position]" and offered to find someone with whom Wallace would feel comfortable speaking, if not him. *Id.*

By Tuesday, August 7, Wallace's Lortab withdrawal symptoms had worsened, and she called in sick.  The next day, Wallace emailed Phillips again: "In addition to yesterday, I unfortunately am unable to come in today and the rest of the week." Ex. App'x at 14.  Phillips replied: "You already know you are going to be sick through Friday? No hope of feeling better? Not sure I understand." Ex. App'x at 58.  Three hours later, Phillips sent another email:

> Could you please be here at 9:00 a.m. sharp on Monday—we need to spend some time talking about your schedule—I think we are slipping from the 9:00 a.m. start time. . . . On the work schedule, in my mind, 9:00 means 9:00—not 9:12, 9:17 or 9:25.  I believe there is a pattern of missing the start time we agreed upon.  While I understand the occasional few minutes—it is a problem when it becomes a pattern. . . .  Please let me know that you have received this e-mail.  Thank you and I hope you are feeling better.

Ex. App'x at 14.

Monday came, and Wallace arrived at work ninety minutes late.  Phillips emailed: "After setting expectations when you started and after having a couple of discussions regarding your schedule, I am very disturbed that you arrived today at 10:30.  We must find time to talk today." Ex. App'x at 60.  Wallace replied several hours later, apologizing.  Phillips agreed "to start fresh," but again stressed the importance of Wallace arriving on time to work. *Id.*

The next day, August 14, Wallace came to work at 9:30.  When she arrived, Wallace tried to give Phillips an explanation, but he told her that they would meet later in the day.  Phillips prepared a "written counseling," a sort of reprimand, and issued it to Wallace. R. 54 at 174:8–9, 174:18–19 (Mar. 30 Trial Tr.) (Page ID #2183); *see also* Ex. App'x at 61.  This written

counseling partially documented Wallace's tardiness and the multiple discussions between Phillips and Wallace regarding Wallace's attendance. Ex. App'x at 61. It also acknowledged that continued tardiness would result in "the escalation of the disciplinary process." *Id.*

On August 15, Wallace, Phillips, and Cathy Bowsher, a FedEx Human Resources Manager, met to discuss the written counseling. *See* Ex. App'x at 50. According to Phillips, Wallace apologized again for her tardiness and explained that she had had trouble "getting her child off to school." R. 54 at 177:23 (Mar. 30 Trial Tr.) (Page ID #2186). She also alerted Phillips and Bowsher to the fact that she was having difficulty, in part, because her doctor had adjusted her medication. At trial, Wallace stated that she did not mention the precise medication being adjusted because she "was not comfortable getting into that much detail." R. 53 at 136:13–14 (Mar. 29 Trial Tr.) (Page ID #1593). In response, Phillips gave Wallace three options:

> First, comply with the attendance policy and complete work assignments in a timely fashion. Second, consider taking a period of time for medical leave until such time as she feels capable of adhering to the attendance policy and completing her work tasks. Lastly, [Wallace could] elect to not comply with the work requirements and suffer the consequences of the progressive discipline process.

Ex. App'x at 50. Wallace did not choose an option at the meeting. R. 53 at 137:6 (Mar. 29 Trial Tr.) (Page ID #1594).

Immediately following the meeting's conclusion, Wallace went to a pre-scheduled appointment with Dr. Kasser. During this visit, Dr. Kasser recognized that Wallace's "condition appeared to be markedly changed" since the last time the doctor saw her and that Wallace "was anxious, shaking, [and] tremulous." *Id.* at 214:10–20 (Page ID #1671). Dr. Kasser "recommend[ed] that [Wallace] be off work for two weeks due to her medical conditions." Ex. App'x at 3. The doctor placed this recommendation in writing and then wrote, "[s]he will then be reassessed." *Id.* Dr. Kasser also presented Wallace with a letter indicating that Wallace's absences from August 7 to August 10 should be excused for medical reasons. Ex. App'x at 62.

Following this appointment, Wallace returned to her workplace and met with Phillips. Wallace presented him with both letters from Dr. Kasser. Two conversations took place. One,

Wallace, Phillips, and Lynn Diebold—an attorney in FedEx's Labor and Employment Group—discussed her medical leave. Phillips passed Wallace several FMLA forms, though they were unmarked and unsigned.[1] Diebold told Wallace that Wallace "need[ed] to have [the paperwork] back within 15 days." R. 53 at 139:18–19 (Mar. 29 Trial Tr.) (Page ID #1596). Two, Phillips tried to have Wallace sign the written counseling, as well as an amendment to the original form. Wallace refused, and Phillips and Scott Young—a colleague of Phillips's—documented Wallace's refusal.

Wallace took the FMLA forms to Dr. Kasser, and the doctor filled out the necessary certification on August 20. *See* Ex. App'x at 9. On August 23, after evaluating Wallace, Dr. Kasser wrote another letter, recommending that Wallace have an additional three weeks of sick leave. *See* Ex. App'x at 10. After this visit, Wallace took the form and the letter, but she never returned either to FedEx. At trial, Wallace explained that she "could not bring [herself] to contact them or see them or go to them to provide those [forms] to them because of . . . the way that [she] was feeling because of . . . stopping all the medication." R. 53 at 144:19–23 (Mar. 29 Trial Tr.) (Page ID #1601). In particular, she said that she "was just not [herself]" and that she "felt like a failure and a disappointment . . . and could not bring [herself] to call anybody or see anybody." *Id.* at 145:1–6 (Page ID #1602). On cross-examination, Wallace admitted that her phone and bank records indicated that she placed several other phone calls and made purchases away from her home. *Id.* at 189:8–191:16 (Page ID #1646–48). During this time, Phillips also sent Wallace an overnight envelope with her timesheets that she was to fill in and return in a prepaid envelope. FedEx never received completed timesheets.

On August 30, according to FedEx, Wallace's original two weeks of leave ended. When Wallace failed to report to work, Phillips tried numerous times to reach her by phone, but he testified that he received a busy signal each time. R. 54 at 195:25–196:1 (Mar. 30 Trial Tr.) (Page ID #2204–05). He also sent an email to Wallace's personal account, alerting her to the fact that her leave had ended and that he had received no documentation from her. *See* Ex. App'x at 69. Phillips did not receive a "read receipt" indicating that Wallace had opened or seen

---

[1]At trial, Phillips admitted that he "didn't know to fill . . . out" the portion of the forms that an employer must fill out. R. 54 at 194:4–5 (Mar. 30 Trial Tr.) (Page ID #2203).

this email.  R. 54 at 200:24–201:10 (Mar. 30 Trial Tr.) (Page ID #2209–10).  This same sequence of events played out again on August 31, and once more, Phillips failed to reach Wallace.  *Id.* at 198:4–200:21 (Page ID #2207–09).  In his August 31 email, Phillips wrote:

> I have received nothing from you related to an extension of the sick time and I have not heard from you related to your failure to return to work on either August 30 or 31.  Even if you had an extension of your time away from the office for sick leave by your doctor, it is your duty and responsibility to notify me of the situation, pursuant to company policy. . . . This is a very serious matter and I would suggest that you review our corporate policies and procedures related to failing to provide proper notice of your absence from work.

Ex. App'x at 70.

The weekend and Labor Day passed without communication between Wallace and anyone at FedEx.  On Tuesday, September 4, Wallace called Bowsher at 5:30 a.m. and left a voice message, telling Bowsher that she was on her way to the hospital for surgery on her right ear.  The same day, Phillips—with the assistance of Bowsher—drafted a termination letter, severing the company's relationship with Wallace for failing to comply with FedEx's attendance policy.  The policy states that "[e]mployees who are absent for two (2) consecutive workdays without notifying a member of management within their organizational hierarchy shall be considered to have voluntarily resigned their employment with [FedEx]."  Ex. App'x at 52.  Phillips sent the termination letter through FedEx's overnight-delivery service.  Phillips and Bowsher also left a voice message for Wallace, advising her that she had been fired.

When Wallace received the letter and the voice message on September 5, she called Phillips, Bowsher, and Jim Ferguson—a general counsel and vice president at FedEx.  Wallace told them that she had a completed medical-certification form, but Ferguson told her that "it didn't matter."  R. 53 at 153:12 (Mar. 29 Trial Tr.) (Page ID #1610).  At trial, Wallace testified that she would have called or turned in the medical-certification form if she had known the consequences of not doing so.

After her termination, Wallace continued to see Dr. Kasser.  On December 13, Dr. Kasser executed a form for the Tennessee Department of Labor and Workforce Development on which she indicated that Wallace had been able to return to her usual duties on September 11, 2007.  *See* Ex. App'x 11.  Starting in mid-October, approximately one month after being terminated,

Wallace began applying for other jobs. *See* Ex. App'x at 12–13. Between October 2007 and January 2010, Wallace applied (unsuccessfully) for approximately eighty jobs. *See id.*

While unemployed, Wallace also started seeing Dr. Jack Morgan, a psychiatrist, in January 2009. When Wallace first visited Dr. Morgan, he awarded her a GAF score of 45 in his notes because "she was not handling things well." R. 54 at 32:9–11, 33:7 (Mar. 30 Trial Tr.) (Page ID #2041, 2042). He also diagnosed her as potentially having bipolar disorder and a personality disorder, as well as suffering from obsessive compulsive disorder and ADHD. Dr. Morgan continued to see and treat Wallace, and by August 2009, she had improved enough that Dr. Morgan assigned a GAF score of 68, meaning that she was in the "higher level of moderate impairment." *Id.* at 43:21 (Page ID #2052). When asked if Wallace could perform her duties as a paralegal in February 2010, Dr. Morgan replied that he did not know the precise duties of a paralegal but that he "would be surprised to see her function well and be comfortable in a . . . larger organization . . . ." *Id.* at 45:3–5 (Page ID #2054).

**B. Procedural History**

On March 3, 2008, Wallace filed suit in federal court, alleging that FedEx violated the FMLA by terminating her employment on September 5, 2007. Wallace requested payment for her lost wages and healthcare benefits, reinstatement (and front pay until she is reinstated), and "liquidated damages in an amount equal to [her] lost wages, salary, and employment benefits" provided for in 29 U.S.C. § 2617(a)(1)(A)(iii). R. 1 at 5 (Compl.) (Page ID #5).

The case went to trial approximately two years later.[2] At the end of Wallace's case-in-chief, FedEx moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). *See* R. 54 at 5:8–10 (Mar. 30 Trial Tr.) (Page ID #2014). FedEx argued that Wallace was not eligible for FMLA leave because she had never returned the medical-certification form required by 29 U.S.C. § 2613(a), and if she was not on FMLA leave, FedEx could not have interfered with it. *Id.* at 6:16–7:14 (Page ID #2015–16). The court denied this motion, finding that a reasonable jury could conclude that FedEx failed to follow 29 C.F.R. § 825.305 (2007),[3]

---

[2]Both parties consented to a magistrate judge handling the proceedings under 28 U.S.C. § 636(c).

[3]Unless otherwise noted, all references to the Code of Federal Regulations are to the version in force at the time of the challenged events in this case.

which requires the company to explain the consequences of not returning the medical-certification form within fifteen days.  R. 54 at 18:9–20:9 (Mar. 30 Trial Tr.) (Page ID #2027–29).

After another day of testimony, FedEx moved again for judgment as a matter of law.  FedEx argued that Wallace failed to put the company on notice that she was taking FMLA leave.  Again, the court denied the motion, finding sufficient evidence in the record to support a reasonable juror's finding in favor of Wallace.  FedEx also moved under Rule 50(a) for judgment as a matter of law on the issues of (1) liquidated damages, arguing that Wallace failed to demonstrate that FedEx acted in bad faith, and (2) front pay, claiming "any calculation of front pay would be purely speculative . . . ."  R. 54 at 235:10–236:18 (Mar. 30 Trial Tr.) (Page ID #2244–45).  The court granted this motion in full.  *See id.* at 247:20–250:12 (Page ID #2256–59).

The court submitted the remainder of the case to the jury, which found that Wallace proved the following elements by a preponderance of the evidence:  (1) "that she suffered from a 'serious health condition' that made her unable to perform the functions of her position"; (2) that she gave FedEx "adequate 'notice' of her intent to take leave under the FMLA"; (3) that FedEx "failed to give her written notice of her obligation to timely provide sufficient medical certification and the consequences if she failed to do so"; and (4) "but for [FedEx's] not providing written notice . . . , [Wallace] would have timely provided [the information]."  R. 56 at 1–2 (Verdict Form) (Page ID #836–37).  The jury awarded Wallace $173,000.  *Id.* at 2 (Page ID #837).  The judgment issued on April 2, 2010.

Since then, the parties have filed numerous motions.  On April 23, 2010, FedEx filed a motion—unopposed by Wallace—requesting that the district court extend the deadline until May 7, 2010 for FedEx to file a motion under Federal Rules of Civil Procedure 50(b) and 59.  R. 62 at 1–3 (Mot. to Extend) (Page ID #847–49).  On April 27, 2010, the court granted this motion.  R. 64 at 1 (Mag. J. Order Granting Extension) (Page ID #871).  The same day, Wallace filed a Rule 59(d) motion for a partial new trial on the issues of liquidated damages and front pay.  R. 63 at 1 (Pl. Rule 59(d) Mot.) (Page ID #850).

On May 7, 2010, FedEx filed a Rule 50(b) motion for judgment as a matter of law, arguing (1) that 29 C.F.R. § 825.305 is arbitrary and capricious; (2) that FedEx provided written

notice regarding Wallace's need to return the medical-certification form; and (3) that Wallace failed to demonstrate any prejudice due to FedEx's failure to provide notice. R. 65 at 1–2 (Def. Rule 50(b) & 59 Mot.) (Page ID #872–73). In the same document, FedEx also moved under Rule 59 for a new trial on the issue of back pay or, in the alternative, remittitur of the compensatory-damages verdict. *Id.*

On December 20, 2010, the magistrate judge denied Wallace's Rule 59(d) motion for a new trial on the issue of liquidated damages, finding that there was no evidence that FedEx or its employees "intentionally or willfully violated Wallace's rights." R. 80 at 8 (Mag. J. Dec. 20, 2010 Ruling) (Page ID #1181). The magistrate judge also denied Wallace's Rule 59(d) motion for a new trial on the issue of front pay because Wallace failed to present evidence that "she was able to return to work." *Id.* at 12 (Page ID #1185).

The next action in this saga took place on March 24, 2011 when the magistrate judge denied FedEx's motion under Rule 50(b) for judgment as a matter of law, but granted FedEx's request for a remittance of the compensatory damages award under Rule 59. R. 87 at 1 (Mag. J. Mar. 24, 2011 Order) (Page ID #2629). The magistrate judge decided that a reasonable jury could not find that Wallace was able to work more than sixteen months between her termination and the trial. *Id.* at 12–13 (Page ID #2640–41). Accordingly, the magistrate judge reduced the compensatory-damages award to $90,788.[4] The rest of FedEx's motions were denied.

On April 25, 2011, Wallace filed her notice of appeal pro se, seeking review of the magistrate judge's grant of FedEx's Rule 50(a) motion on March 31, 2010 on the issues of liquidated damages and front pay; the magistrate judge's order of April 27, 2010, extending FedEx's filing deadline; the magistrate judge's order of December 20, 2010, denying Wallace's motion for a new trial on liquidated damages and front pay; and the magistrate judge's order of March 24, 2011, granting remittitur. R. 92 (Pl. Notice of Appeal) (Page ID #2659). On May 3, 2011, the magistrate judge's revised judgment issued. R. 95 (Revised J.) (Page ID #2670). And on May 9, 2011, FedEx filed its notice of cross-appeal, challenging the magistrate judge's order of March 24, 2011, denying FedEx's motion for judgment as a matter of law, and also the

---

[4]This number is the sum of sixteen months of unpaid wages at $5,528 per month and $2,340—the cost of Wallace's lost benefits. *See* R. 87 at 9 n.3 (Mag. J. Mar. 24, 2011 Order) (Page ID #2637).

revised judgment entered on May 3, 2011.  R. 96 (Def. Notice of Cross-Appeal) (Page ID #2671).

On May 17, 2011, the clerk's office for this circuit issued an order to show cause to Wallace, having observed that her notice to appeal appeared to have been filed late as it related to the magistrate judge's decisions of March 31, 2010, April 27, 2010, and December 20, 2010. *See Wallace v. FedEx Corp.*, No. 11-5500, at *1 (6th Cir. May 17, 2011) (unpublished order). The show-cause order reasoned that FedEx's May 7, 2010 motion was not timely filed because it was filed more than 28 days from when the lower court issued its judgment, and Federal Rule of Civil Procedure 6(b)(2) prevents a court from extending this period of time.  *Id.*  The order required Wallace to explain "why [her] appeal should not be partially dismissed for failure to comply with Federal Rule of Appellate Procedure 4(a)," which requires a plaintiff to file a notice of appeal within 30 days of the judgment or ruling on the last timely filed dispositive motion. *Wallace v. FedEx Corp.*, No. 11-5500, at *2 (6th Cir. May 17, 2011) (unpublished order).  On June 8, Wallace replied pro se, agreeing that Federal Rule of Civil Procedure 6(b)(2) prevents a court from extending the time to file a Rule 59 motion, but offering little argument other than to state that "she [was] not waiving her right to appeal issues within FedEx's post-trial motion." Appellant Mot. to Show Cause at 2.

On December 14, 2011, a motions panel issued an order, dismissing Wallace's appeal of the magistrate judge's rulings of March 31, 2010, April 27, 2010, and December 20, 2010. *Wallace v. FedEx Corp.*, Nos. 11-5500 & 11-5577, at *3 (6th Cir. Dec. 14, 2011) (unpublished order).  The motions panel reasoned that, under Federal Rule of Appellate Procedure 4, FedEx's Rules 50(b) and 59 motion was not timely filed and, therefore, that that motion did not toll the appeals period.  *Id.* at *2.  As a result, because Wallace filed her notice of appeal more than twenty-eight days after the magistrate judge's December 20, 2010 ruling, she did not comply with Federal Rule of Appellate Procedure 4, depriving us of jurisdiction to hear her appeal of those rulings, leaving only her appeal of the March 24, 2011 order.  *Id.*  In addition, the motions panel ruled FedEx's cross-appeal of the March 24, 2011 ruling was timely.  *Id.*

In her current appeal, Wallace raises several claims:  (1) her notice of appeal related to the March 31, 2010 and December 20, 2010 rulings was timely filed; (2) the magistrate judge

erred in granting FedEx's Rule 50(a) motion on (a) liquidated damages and (b) front pay; and (3) the magistrate judge erred in reducing the jury's award of back pay.  In its cross-appeal, FedEx avers that the magistrate judge erred in several ways in denying FedEx judgment as a matter of law:  (1) the magistrate judge found that a reasonable juror could conclude that (a) FedEx did not comply with the requirements of 29 C.F.R. § 825.305(a) & (d); (b) Wallace put FedEx on notice that she intended to take FMLA leave after August 29; and (c) FedEx terminated Wallace's employment due to her FMLA leave; and (2) the magistrate judge inappropriately deferred to 29 C.F.R. § 825.305 because it is arbitrary and capricious.

## II.  JURISDICTION

Before evaluating any of the parties' arguments on the merits of the magistrate judge's various rulings, we must first determine which issues are properly in front of us.  *See, e.g.*, *First Nat'l Bank of Pulaski v. Curry*, 301 F.3d 456, 461 (6th Cir. 2002).  The main question presented is whether we can entertain Wallace's claims regarding the magistrate judge's December 20, 2010 ruling given that a motions panel has already dismissed this appeal as untimely. Ultimately, we conclude that we can decide only the appeal and cross-appeal related to the magistrate judge's March 24, 2011 order.

### A.  Applicable Rules

Answering this question requires us to decipher how several rules of civil and appellate procedure interact.  By way of introduction and for ease of reference, we briefly describe these rules at the outset.  Under Federal Rule of Appellate Procedure 4, a notice of appeal "must be filed with the district clerk within 30 days after entry of the judgment or the order appealed from."[5]  Fed. R. App. P. 4(a)(1)(A).  However, under the terms of the rule, "[i]f a party timely files [a motion under Federal Rules of Civil Procedure 50(b) or 59], the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion."  Fed. R. App. P. 4(a)(4)(A).  According to the plain text of the rules, these post-judgment motions are timely if filed "no later than 28 days after the entry of the judgment."  Fed. R. Civ. P. 50(b) &

---

[5]In *Bowles v. Russell*, 551 U.S. 205 (2007), the Supreme Court held this requirement to be jurisdictional. *Id.* at 214.

59(b).   In addition, Federal Rule of Civil Procedure 6(b)(2) prohibits a district court from extending this twenty-eight-day time period.[6]   With this framework in mind, we turn to the jurisdictional questions.

**B.  Wallace's Appeal of Liquidated-Damages and Front-Pay Rulings**

On December 14, 2011, the motions panel dismissed Wallace's appeal relating to the issues of liquidated damages and front pay, holding that Wallace had failed to comply with Federal Rule of Appellate Procedure 4.   Wallace claims that this decision was clearly erroneous under our binding precedent.   Before we can reach the question of whether Wallace complied with Federal Rule of Appellate Procedure 4, however, we must first satisfy ourselves that we can even consider reinstating her appeal.

In the regular course of events, one panel of this court cannot overrule another panel's published decision.  *See Darrah v. City of Oak Park*, 255 F.3d 301, 309 (6th Cir. 2001).   While the decisions of motions panels are generally interlocutory in nature (and, thus, not strictly binding upon subsequent panels), they do receive some measure of deference.  *See, e.g.*, *Kraus v. Taylor*, 715 F.3d 589, 594 (6th Cir. 2013); *R.E. Dailey & Co. v. John Madden Co.*, 983 F.3d 1068, at *1 n.1 (6th Cir. 1992) (table decision).   Later panels cannot simply choose to disregard motions-panel decisions, and if a litigant wishes to challenge a motions panel's decision on a dispositive motion, the proper course of action is to request panel rehearing or rehearing en banc. *See* 6 Cir. R. 35, 40; *see also Plumhoff v. Rickard*, 134 S. Ct. 2012, 2018 (2014) (noting our use of this procedure); *Bowles v. Russell*, 432 F.3d 668, 671 (6th Cir. 2005) (same), *aff'd*, *Bowles v. Russell*, 551 U.S. 205 (2007).

In this case, Wallace did not explicitly petition for rehearing.   Instead, she filed her first opening brief pro se on April 13, 2012, and in this brief, she renewed her argument that the magistrate judge erred in granting FedEx's motion for judgment as a matter of law on the issues of liquidated damages and front pay.   Given the motions panel's dismissal of Wallace's appeal of this issue, it makes little sense for her to include this argument in her appellate brief unless she

---

[6]In *National Ecological Foundation v. Alexander*, 496 F.3d 466 (6th Cir. 2007), we held that Federal Rules of Civil Procedure 6 and 59 were claim-processing rules, meaning that federal courts can recognize equitable exceptions to them.  *Id.* at 474.

sought review of the motions panel's decision. Reading Wallace's pro se filings liberally, as we must, we construe this language as a request for rehearing. *See, e.g., United States v. Ninety-Three (93) Firearms*, 330 F.3d 414, 427–28 (6th Cir. 2003); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991); *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990).

Under the Federal Rules of Appellate Procedure, a petition for panel rehearing must be filed within fourteen days "[u]nless the time is . . . extended by order or local rule." Fed. R. App. P. 40(a)(1). There is no debate that Wallace's initial appellate brief was approximately three and one half months late, but our rules recognize an exception to the timing requirements for tardy petitions that are accompanied by "most compelling reasons." 6 Cir. R. 40(a).

Wallace implicitly contends that these reasons exist because the motions panel's decision directly conflicts with a prior published decision of this court—*National Ecological Foundation v. Alexander*, 496 F.3d 466 (6th Cir. 2007). On the narrow point that the motions panel's order is in conflict with *National Ecological*, Wallace is correct. The *National Ecological* panel faced an indistinguishable situation and came out the other way.[7] There, the district court entered a judgment; within the relevant time period, the losing party asked for an extension of time to file a Rule 59 motion; the motion for an extension was unopposed and granted; and the losing party then filed its Rule 59 motion in accordance with the judge's extension, but outside of the time period prescribed in Rule 59. *Nat'l Ecological*, 496 F.3d at 473. The district court in that case denied the motion on the merits, and the losing party appealed. On appeal, the other party argued—for the first time—that the Rule 59 motion was not timely, that the motion did not toll the appeals period, and that we were, thus, without jurisdiction to hear the appeal. *Id.* We disagreed with this opportunistic argument, holding that Rules 6 and 59 are "claim-processing rules that provide[] [parties] with a forfeitable affirmative defense." *Id.* at 475. Because the objecting party had forfeited that affirmative defense by not objecting to the extension of time in

---

[7]FedEx cites *Lizardo v. United States*, 619 F.3d 273 (3d Cir. 2010), and *Blue v. International Brotherhood of Electrical Workers Local Union 159*, 676 F.3d 579 (7th Cir. 2012), as evidence that *National Ecological* is no longer good law. In both cases, our sister circuits held that an untimely Rule 59 motion did not toll Federal Rule of Appellate Procedure 4's thirty-day limit and explicitly rejected *National Ecological*. *Blue*, 676 F.3d at 582–83; *Lizardo*, 619 F.3d at 278–79. They reasoned that our holding unnecessarily creates inconsistency in Rule 4 and that it frustrates the rule's purpose of bringing certainty to the appeals timeline. *See, e.g., Lizardo*, 619 F.3d at 278–79. Our court, however, does not stand alone on this issue. *See Obaydullah v. Obama*, 688 F.3d 784, 787–791 (D.C. Cir. 2012). Regardless, the decisions of other circuits do not free us to overrule a prior panel's published decision. *National Ecological*—whatever its merits—is binding upon us in this case.

the district court, we reasoned that the Rule 59 motion was timely under Federal Rule of Appellate Procedure 4.  *Id.* at 476.

*National Ecological* is directly on point, and it is the law of the circuit, meaning that it binds all subsequent panels "'unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision.'" *Darrah*, 255 F.3d at 309 (quoting *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985)); *see also* Charles Alan Wright et al., *Federal Practice & Procedure* § 4478.2 (2d ed. 2002) (distinguishing between law of the case and law of the circuit).  The Supreme Court has not decided a case that would allow the motions panel to cast aside *National Ecological*,[8] and we have not overturned the case en banc.  Therefore, on December 14, 2011, it was binding precedent.  By not following that decision, the motions panel clearly erred in holding that Wallace's notice of appeal was untimely.

Unfortunately for Wallace, however, the motions panel's clear error is not—in and of itself—enough to warrant us reopening her appeal three years later.  We recognize that this ruling appears harsh, but we do not believe that it results in a manifest injustice for several reasons.  One, Wallace "agree[d] with the [motions panel] that FedEx's Rule 50/Rule 59 motion [was] untimely," and she maintained that "she [was] not waiving her right to appeal issues within FedEx's post-trial motion."  Appellant Mot. to Show Cause at 2.  While we do not read the filings of pro se litigants as strictly as those submitted by counsel, we cannot wholly ignore the plain words of unrepresented litigants in civil cases, even if they mistakenly accept erroneous judicial rulings.  Two, Wallace had an opportunity to raise *National Ecological* in her response to the clerk's order to show cause, and she had two weeks after the motions panel's December 14, 2011 order to request rehearing.  She did neither, bringing it to the court's attention for the first time on September 16, 2013—almost two years after the motions panel's order.  *See* First Br. at 30.  Three, FedEx did not manipulate events to prevent Wallace from appealing the magistrate judge's December 20, 2010 order.  The clerk's office issued the order to show cause,

---

[8]Our court decided *National Ecological* after the Supreme Court handed down its opinion in *Bowles*.  In *National Ecological*, the panel explicitly discussed *Bowles* and distinguished its holding, reasoning that *Bowles* applies only to rules "'set forth in a statute.'"  496 F.3d at 475 (quoting *Bowles*, 551 U.S. at 210).  Whether *National Ecological* was correctly decided is beside the point in this case; it is a prior published decision of this court, and we are bound by it.

and the motions panel issued its ruling without any submissions from FedEx.  As a result, we must conclude that this case does not fall within the narrow exception to Federal Rule of Appellate Procedure 40's fourteen-day limitations period, and we cannot revisit the motions panel's erroneous three-year-old decision.**9**  Thus, Wallace's appeal of the magistrate judge's liquidated-damages and front-pay rulings will not be considered.

## III.  ANALYSIS

### A.  FMLA Liability

Having decided that we may review only the parties' appeals and cross-appeals related to the March 24, 2011 order, we turn first to FedEx's contention that the magistrate judge erred by not awarding it judgment as a matter of law on the issue of FMLA liability.  Under the FMLA, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]."  29 U.S.C. § 2615(a)(1).  Successfully proving an FMLA-interference claim requires a plaintiff to demonstrate that "(1) she was an eligible employee, (2) the defendant was an employer as defined under the FMLA, (3) she was entitled to leave under the FMLA, (4) she gave the employer notice of her intention to take leave, and (5) the employer denied [or interfered with] the employee['s] FMLA benefits to which she was entitled."  *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006).  "Employees seeking relief under the [interference] theory must [also] establish that the employer's violation caused them harm."  *Id.* at 508 (citing *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002)).  "[I]f the employer [can show it had] a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct," no violation exists under the FMLA.  *Id.* (citing *Arban v. West Publ'g Co.*, 345 F.3d 390, 401 (6th Cir. 2003)).  If a plaintiff successfully clears these hurdles, however, the employer is liable "for damages and 'for such equitable relief as may be appropriate.'"  *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003), *superseded on other grounds by* 29 C.F.R. § 825.302(d); *see also Srouder v. Dana Light Axle Mfg., LLC*, 725 F.3d 608, 614–15 (6th Cir. 2013) (recognizing change in law).

---

**9**Wallace repeatedly cites *Cohens v. Virginia*, 19 U.S. (6 Wheat) 264 (1821), and its progeny for the proposition that we must exercise the jurisdiction given to us by Congress. *See, e.g.*, First Br. at 34.  As a general matter, we agree as we must, but this statement does little to instruct us on the boundaries of our jurisdiction.

In its cross-appeal, FedEx argues that the magistrate judge erred in denying FedEx judgment as a matter of law because, in its view, no reasonable juror could find on the record submitted that (1) Wallace provided FedEx with notice of her intention to take FMLA leave; (2) FedEx interfered with this leave by failing to comply with 29 C.F.R. § 825.305; (3) FedEx lacked a legitimate reason for terminating Wallace's employment; and (4) FedEx's noncompliance with § 825.305 prejudiced Wallace.  In addition, FedEx challenges § 825.305, itself, as arbitrary and capricious.

We review de novo the denial of a motion (or renewed motion) for judgment as a matter of law.  *Arban*, 345 F.3d at 400; *Tisdale v. Fed. Express Corp.*, 415 F.3d 516, 527 (6th Cir. 2005)).  "Judgment as a matter of law is appropriate when 'viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion in favor of the moving party.'" *Tisdale*, 415 F.3d at 527 (quoting *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 720 (6th Cir. 2004)).  For the reasons stated below, we **AFFIRM** the magistrate judge's denial of FedEx's motions.

### 1.  Notice

"[T]o invoke the protection of the FMLA, an employee must provide notice and a qualifying reason for requesting the leave." *Brohm v. JH Props., Inc.*, 149 F.3d 517, 523 (6th Cir. 1998) (citing *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 762 (5th Cir. 1995)).  Under the regulations in place at the time of these events, this notice must have been given "as soon as practicable under the facts and circumstances of the particular case."  29 C.F.R. § 825.303(a).  Moreover, "[t]he employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed.  The *employer* will be expected to obtain any additional required information through informal means."  § 825.303(b) (emphasis added).  The employee's burden is not heavy.  "'[A]n employee gives his employer sufficient notice that he is requesting leave for an FMLA-qualifying condition when he gives the employer enough information for the employer to reasonably conclude that an event described in the FMLA § [2612(a)(1)] has occurred.'"  *Cavin*, 346 F.3d at 723–24 (quoting *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 451 (6th Cir. 1999)) (alterations in original).  In addition, part of reasonable notice generally includes an indication of "the anticipated timing and duration of the leave."

29 C.F.R. § 825.302(c). After all, even though a qualifying employee is permitted up to twelve weeks of leave in a calendar year under the statute, many injuries and illnesses will not require the full allotment of time off. *See* 29 U.S.C. § 2612(a)(1).

In its cross-appeal, FedEx argues that "Wallace failed to present any evidence showing that she provided FedEx notice of an intention to take FMLA leave beyond the non-FMLA leave she received for August 15th through 29th." Second Br. at 38; *see also* Fourth Br. at 13. Specifically, FedEx focuses upon Wallace's failure to return the medical-certification form or to indicate that she desired leave beyond August 29.

By focusing on whether Wallace provided enough documentation for continued leave, FedEx largely misses the point of this notice element. The relevant question is whether Wallace provided FedEx with notice that she needed FMLA leave, not whether she provided notice that she needed a certain amount of FMLA leave. *See Cavin*, 346 F.3d at 725 (finding a plaintiff's notice to the defendant "sufficient to apprise [the defendant] of his request to take time off for a serious health condition" (internal quotation marks omitted)). Based on the record in this case, the jury found in favor of Wallace—a reasonable decision. R. 56 at 1 (Jury Verdict) (Page ID #836). Wallace provided Phillips with a note from Dr. Kasser, indicating that Wallace had a serious medical condition that required her to take leave from work. *See* Ex. App'x at 3; R. 54 at 180:10–182:20 (Mar. 30 Trial Tr.) (Page ID #2189–91). Moreover, Phillips understood that Wallace needed FMLA leave as evidenced by the fact that he discussed the FMLA with in-house counsel and then provided Wallace with FMLA paperwork. *See id.* at 185:12–186:19 (Page ID #2194–95); R. 53 at 140:19–141:24 (Mar. 29 Trial Tr.) (Page ID #1597–98). Given these two pieces of evidence, a reasonable juror could conclude that Wallace had provided FedEx with sufficient notice.

Even if we were to adopt FedEx's line of thinking, the jury was not unreasonable in concluding that Wallace requested leave that extended to her absences on September 3 and 4. Dr. Kasser's note stated that she "recommend[ed] that [Wallace] be off for two weeks due to her medical conditions. She will then be reassessed." Ex. App'x at 3. In an ideal world, Wallace would have updated this note to clarify that Dr. Kasser explicitly found another three weeks of leave were necessary, but Dr. Kasser's note is open to interpretation. A reasonable jury could

conclude that the use of "two weeks" was an approximate span of time, a reading that gains more traction when combined with the sentence "[s]he will then be reassessed." Moreover, a reasonable jury could conclude that Dr. Kasser's note not only provides a rough estimate of time needed but also indicates that the medical professionals would need to clear Wallace to return to work before her leave would end.[10] From our vantage point, it is not clear that the jury refused to make these implicit findings, and if it did make them, those findings would not be unreasonable. Thus, if we draw all inferences in favor of the jury's verdict, we cannot hold that the magistrate judge erred in refusing to grant judgment as a matter of law on this point.

### 2. Interference

FedEx also argues that no reasonable jury could find that FedEx's termination of Wallace's employment was an interference with her rights under the FMLA because Wallace's failure to return the medical-certification form meant that she was not eligible for leave under the statute. This broad argument triggers a number of questions: (a) whether FedEx provided Wallace with sufficient notice regarding the consequences of failing to return a medical-certification form; (b) if not, whether 29 C.F.R. § 825.305—which sets forth the standard for sufficient notice—is arbitrary and capricious; and (c) if not, whether FedEx nonetheless had a legitimate reason, independent of FMLA-related leave, to terminate Wallace's employment. Ultimately, the answers to each of these questions favor Wallace, and thus, we **AFFIRM** the magistrate judge's denial of FedEx's request for judgment as a matter of law on these points.

### a. FedEx's Noncompliance with 29 C.F.R. § 825.305

Under the Department of Labor's regulations, an employer has the option of requesting (in writing) that an employee provide medical certification that she is suffering from a serious medical condition. 29 C.F.R. § 825.305(a). In cases like this one, where the need for a leave of absence is unforeseeable, an employer must give an employee at least fifteen days to return a medical-certification form. §§ 825.305(b); 825.311(b). "If an employee fails to provide a

---

[10]Also, the FMLA forms given to Wallace on August 15 read: "You notified us that you need this leave beginning on _____ (Date) and that you expect leave to continue until on or about _____ (Date)." Ex. App'x at 4. Importantly, Phillips never filled in these spaces when giving the forms to Wallace. They remained blank.

medical certification within a reasonable time under the pertinent circumstances, the employer may delay the employee's continuation of FMLA leave. If the employee never produces the certification, the leave is not FMLA leave." §825.311(b). However, in order to impose these sanctions, "[a]t the time the employer requests certification, the employer must also advise an employee of the anticipated consequences of an employee's failure to provide adequate certification." § 825.305(d). At trial, the jury found that FedEx failed to meet these requirements and, thus, that FedEx could not hold Wallace's failure to turn in her certification against her. R. 56 at 2 (Jury Verdict) (Page ID #837). Moreover, the jury found that if FedEx had instructed Wallace on the consequences of not producing the certification form, she would have turned it in to FedEx. *Id.* In its cross-appeal, FedEx argues that we should overturn these jury findings because, it claims, the only reasonable conclusion that could be drawn from the evidence is that FedEx satisfied the FMLA's notice requirements. We disagree.

If all inferences are drawn in the jury's favor, the record supports the jury's findings. The parties agree that Phillips and Diebold told Wallace that she needed to return a medical-certification form within fifteen days. R. 53 at 139:18–19 (Mar. 29 Trial Tr.) (Page ID #1596). But § 825.305 requires written notice, so these statements help FedEx very little. The parties also agree that Phillips gave Wallace FMLA forms, *id.* at 140:19–141:24 (Page ID #1597–98), which stated that "Family Medical Leave is not automatic" and that "[q]ualification under FMLA will be determined upon timely receipt of the medical certification form (within 15 calendar days) *if requested*," Ex. App'x at 4 (emphasis added). In addition, the form stated that "[w]hether your absence is FMLA will be determined upon timely receipt of the medical certification." Ex. App'x at 5. However, the forms were left unmarked. Moreover, the memorandum that Phillips gave Wallace on August 15 to sign stated: "consider taking a period of time for medical leave until such time as [you] feel[] capable of adhering to the attendance policy and completing [your] work tasks." Ex. App'x at 50. There is no mention of the need for medical certification or the consequences of failing to produce it. Given this evidence, a reasonable jury could find that FedEx failed to comply with the FMLA regulations and, thus, that terminating Wallace's employment interfered with her ongoing FMLA leave.

**b. 29 C.F.R. § 825.305 Is Not Arbitrary or Capricious**

FedEx also argues that the magistrate judge erred by applying 29 C.F.R. § 825.305 at all because, it claims, the regulation is arbitrary, capricious, and conflicts with the FMLA. In support of this charge, FedEx offers three arguments:  (1) that the regulation inappropriately defines 29 U.S.C. § 2613(a)'s requirement that an employee provide a medical-certification form "in a timely manner" as giving the employee at least fifteen days; (2) that requiring the employer to provide individualized notice of the consequences of failing to turn in a medical-certification form converts 29 U.S.C. § 2615 into a strict-liability statute; and (3) requiring an employer to provide notice beyond 29 U.S.C. § 2619's requirements conflicts with the statute.  Second Br. at 49–50.  These arguments are not convincing.

First, interpreting "a timely manner" to be at least fifteen days is within the agency's discretion.  The FMLA grants the Secretary of Labor power to "prescribe such regulations as are necessary to carry out" the statute.  29 U.S.C. § 2654.  Accordingly, the Supreme Court has recognized that "[t]he Secretary's judgment that a particular regulation fits within this statutory constraint must be given considerable weight."  *Ragsdale*, 535 U.S. at 86.  That said, "[a] regulation cannot stand if it is 'arbitrary, capricious, or manifestly contrary to the statute.'"  *Id.* (quoting *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984)).  The FMLA requires an employee to return a certification form in "a timely manner," and the Secretary has interpreted this phrase to allow employees at least fifteen days to comply with their employers' requests.  "[A] timely manner" is ambiguous, meaning that Congress has not spoken to this precise issue.  *See Chevron*, 467 U.S. at 842–43.  Given the amount of time that can be involved in securing an appointment with a doctor, interpreting "timely" to mean at least fifteen days is reasonable and within the Secretary's discretion.  As a result, this challenge to the regulation fails.

Second, requiring employers to provide employees individualized notice of the consequences of not returning a medical-certification form does not turn 29 U.S.C. § 2615 into a strict-liability statute.  FedEx is correct that this court has recognized multiple times that § 2615 is not, and cannot be, a strict-liability statute.  *See Harris v. Metro. Gov't of Nashville & Davidson Cnty.*, 594 F.3d 476, 483–84 (6th Cir. 2010); *Edgar*, 443 F.3d at 507.  FedEx is also

correct that an employee must demonstrate that an employer's failure to follow the FMLA and its regulations caused her harm. *See* Second Br. at 30 (citing *Ragsdale*, 535 U.S. at 89; *Edgar*, 443 F.3d at 508). The problem for FedEx is that the existence of this prejudice requirement distinguishes 29 C.F.R. § 825.305 from § 700(a), which "relieve[d] employees of the burden of proving any real impairment of their rights and resulting prejudice" and was struck down by the Supreme Court. *Ragsdale*, 535 U.S. at 90. Under 29 C.F.R. § 825.305, an employee still must prove that an employer's actions caused her harm before she can recover. Therefore, § 825.305 does not conflict with the statute, and the magistrate judge was correct to refer to the regulation in rejecting FedEx's Rule 50(b) motion.

Third, requiring an employer to provide an employee with individualized notice regarding the consequences of not completing the certification process does not conflict with 29 U.S.C. § 2619. In relevant part, § 2619(a) states: "Each employer shall post and keep posted, in conspicuous places on the premises of the employer where notices to employees and applicants for employment are customarily posted, a notice . . . setting forth excerpts from, or summaries of, the pertinent provisions of this subchapter and information pertaining to the filing of a charge." Without citations to precedent, FedEx argues that this provision is exclusive and that the Secretary cannot prescribe additional notice requirements. Second Br. at 30–31. The lack of support for this argument is telling. Again, the FMLA grants the Secretary broad powers to enact regulations to carry out the remedial purpose of the statute. As four justices of the Supreme Court noted, "nothing in the [FMLA] precludes the Secretary from accomplishing her goals [of ensuring protected leave] through a requirement of individualized notice." *Ragsdale*, 535 U.S. at 99 (O'Connor, J., dissenting). Neither the FMLA's language nor the *Ragsdale* majority opinion contradicts this statement. Moreover, there is good reason to require such notice: when notice is given of the consequences, employers can safely deny leave or terminate employment if the certification is not returned, and all parties have a clear understanding of their duties and responsibilities. Thus, the Secretary's decision to require individualized notice is not arbitrary, capricious, or contrary to the statute, and FedEx's challenge fails.

**c. Independent, Legitimate Reason**

Next, FedEx argues that it terminated Wallace for a legitimate reason—failing to comply with the company's attendance policy—which was independent of her FMLA leave. Again, FedEx correctly states the law. We have said that "[a]n employee lawfully may be dismissed, preventing him from exercising his statutory rights to FMLA leave or reinstatement, but only if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave." *Arban*, 345 F.3d at 401 (citing *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998)).

Despite stating the law correctly, FedEx errs when it argues that failing to report for work on August 30 and 31 is somehow independent from the FMLA leave at issue in this case. Wallace's failure to report for work—and her subsequent termination—is a direct result of failing to perfect her FMLA leave, which is a consequence of FedEx failing to meet its responsibilities under § 825.305. This situation differs significantly from the situation in *Arban*, which was a closer question and still not deemed an independent, legitimate reason. 345 F.3d at 401–02. In *Arban*, the defendant had arguably found cause to dismiss the plaintiff before he requested leave. *Id.* In some cases, this pre-leave finding would be enough to allow an employer to fire an employee despite the FMLA. However, when the absences and cause for discharge relate directly to the FMLA leave and the company's failure to give notice, as they do in this case, there is no legitimate and independent reason for dismissal. In this case, the purported legitimate reason is intimately intertwined with the FMLA leave, and therefore, we reject FedEx's contention.

**d. Prejudice**

Finally, FedEx challenges the jury's finding that "but for [FedEx] not providing written notice regarding [Wallace's] obligations to provide medical certification and the consequences for not doing so, [Wallace] would have timely provided sufficient medical certification[.]" R. 56 at 2 (Jury Verdict) (Page ID #837). FedEx contends that no reasonable juror could make this decision based on the evidence at trial for two reasons: (1) there is no evidence that FedEx fired Wallace for failing to return her medical-certification form; and (2) Wallace admitted her

emotional state—not lack of notice—caused her not to turn in the form. Neither argument is meritorious.

FedEx's first argument fails because it asks us to ignore the full chain of causation that led to Wallace failing to report to work on August 30 and 31. FedEx claims that it terminated Wallace's employment because she was absent—without a valid excuse—for two consecutive days, but the reason her absences were unexcused was because Wallace failed to perfect her FMLA leave. The reason she failed to perfect her leave was because she failed to return the medical-certification form, and the reason she failed to return the form, according to the jury, was because FedEx failed to inform her of the consequences of failing to do so as required by 29 C.F.R. § 825.305. Thus, FedEx's failure to provide notice was the proximate cause of her termination, meaning that its failure to comply with the regulations prejudiced Wallace. In support of this argument, Wallace testified that she did not know the consequences of failing to return the certification form and that, had she known, she would have returned the form. R. 53 at 152:10–15 (Mar. 29 Trial Tr.) (Page ID #1609). A jury would not be unreasonable in relying upon this testimony and line of inferences in reaching its decision. Therefore, we reject this claim of error.

FedEx's second argument is also fruitless. The corporation contends that Wallace admitted that she failed to return the form, not because FedEx failed to give her notice, but because she was "emotionally and mentally . . . not [her]self." R. 53 at 145:2 (Mar. 29 Trial Tr.) (Page ID #1602). In the Fourth Brief, FedEx writes, "[h]er failure to comply with the certification requirement resulted from her diminished emotional state and not FedEx's alleged actions, therefore, Wallace could not show as a matter of law that she was harmed by FedEx's alleged technical violation of the FMLA." Fourth Br. at 12. In making this argument, FedEx disregards § 825.305's equitable-tolling provision, elevates its attendance policy over the protections of the FMLA, and oversimplifies mental illness. It is impossible to recreate how Wallace balanced her exertions in August of 2007, and if she had known that returning the certification was necessary to keep her job, she may have rearranged her priorities in dealing with her mental illness to comply with FedEx's request. She did not have this information, and

thus, a reasonable jury would be justified in finding that she was prejudiced by FedEx's failure to comply with § 825.305.

***

In summary, for the reasons stated above, we reject FedEx's cross-appeal in full and **AFFIRM** the magistrate judge's denial of FedEx's motions for judgment as a matter of law.

## B.  Damages

Wallace appeals the magistrate judge's reduction of the jury's damages award.  Under the Seventh Amendment, "no fact tried by a jury shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law."  U.S. Const. amend. VII.  "This has long been held to preclude a court from substituting 'its own estimate of the amount of damages which the plaintiff ought to have recovered, to enter an absolute judgment for any other sum than that assessed by the jury.'"  *Lulaj v. Wackenhut Corp.*, 512 F.3d 760, 766 (6th Cir. 2008) (quoting *Kennon v. Gilmer*, 131 U.S. 22, 29 (1889)).  There are two recognized exceptions, however:  "First, a judge may offer a prevailing plaintiff the option of either a new trial or a reduced award in a process known as remittitur."  *Id.*  "Second, a court may render judgment as a matter of law as to some portion of a jury award if it is compelled by a legal rule or if there can be no genuine issue as to the correct calculation of damages."  *Id.*

In her briefing, Wallace assigns two errors:  (1) the magistrate judge remitted her back-pay damages award without giving her the option of a new trial; and (2) the magistrate judge impermissibly reweighed the evidence in deciding to reduce the jury's award of damages.  FedEx responds that (1) the magistrate judge granted its Rule 50(b) motion for judgment as a matter of law, and thus, there was no need to offer a new trial; and (2) a reasonable jury could conclude—at the most—that Wallace was able to work for sixteen months, not thirty-one as the jury found.  Wallace is correct in both instances, and therefore, we **REVERSE** the magistrate judge's reduction of damages and **ORDER** judgment be entered for the full jury verdict.

### 1.  The Magistrate Judge Granted Remittitur

On May 7, 2010, FedEx filed a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) and, in the alternative, a motion for remittitur or a new trial under

Rule 59. R. 65 at 1 (Def. Rule 50(b) and 59 Mot.) (Page ID #872). In her "Order Denying Defendant's Motion for Judgment as a Matter of Law and For New Trial and Granting Remittitur of Back Pay Award," the magistrate judge reduced the jury's back-pay award from $173,000 to $90,788. R. 87 at 14 (Mag. J. Mar. 24, 2011 Order) (Page ID #2642). The question is whether the magistrate judge granted the Rule 50(b) motion for judgment as a matter of law or the Rule 59 motion for remittitur.[11] If she granted the Rule 50(b) motion for judgment as a matter of law, there was no need to offer Wallace the option of a new trial on damages. If she granted the Rule 59 motion for remittitur, the magistrate judge committed procedural error by not offering Wallace that option, and we must reverse. *See Farber v. Massillon Bd. of Educ.*, 917 F.2d 1391, 1396 (6th Cir. 1990). Given the language of the magistrate judge's order, it is clear that she granted FedEx's request for remittitur under Rule 59.[12]

First, the March 24, 2011 order is styled as a denial of FedEx's motion for judgment as a law and a grant of remittitur. *See* R. 87 at 1 (Mag. J. Mar. 24, 2011 Order) (Page ID #2629). Second, the magistrate judge recites only the standard for granting remittitur, not the legal requirements for granting judgment as a matter of law, in the relevant section of her opinion. *See id.* at 10 (Page ID #2638) (quoting *Roush v. KFC Nat'l Mgmt. Co.*, 10 F.3d 392, 397 (6th Cir. 1993)). FedEx points to the magistrate judge's statement that "FedEx's motion for judgment as a matter of law on this issue is granted," but in the next sentence the magistrate judge writes, "[t]he court orders the award of back pay reduced . . . ." *Id.* at 14 (Page ID #2642). Clearly, the magistrate judge has muddled these two motions, but the use of the word "reduced" suggests that

---

**11**"Except in those cases in which it is apparent as a matter of law that certain identifiable sums included in the verdict should not have been there, the court may not arbitrarily reduce the amount of damages, for to do so would deprive the parties of their constitutional right to a jury." Charles Alan Wright et al., *Federal Practice & Procedure* § 2815 (2012) (text accompanying notes 2–3); *see also Westchester Fire Ins. Co. v. Hanley*, 284 F.2d 409, 418 (6th Cir. 1960) (reducing damages as a matter of law without ordering a new trial when contract determined the correct amount of damages).

**12**Wallace also argues that the magistrate judge must have granted FedEx's Rule 59 motion because FedEx could not bring a Rule 50(b) motion on this issue, having failed to raise it in a Rule 50(a) motion prior to the verdict. *See* Third Br. at 35–37 (citing, *inter alia*, *Jack Henry & Assocs., Inc. v. BSC, Inc.*, 487 F. App'x 246, 250 (6th Cir. 2012) ("A post-verdict motion for a judgment as a matter of law 'may not advance additional grounds that were not raised in the pre-verdict motion.' *Kusens v. Pascal Co. Inc.*, 448 F.3d 349, 361 (6th Cir. 2006). And judgment as a matter of law 'is not available at anyone's request on an issue not brought before the court prior to submission of the case to the jury.' *Am. & Foreign Ins. Co. v. Bolt*, 106 F.3d 155, 160 (6th Cir. 1997).")). We agree that FedEx's pre-verdict motions do not contain any objections to a back-pay verdict that had not yet been rendered. However, as FedEx notes, Wallace failed to object on these grounds in her response to FedEx's post-judgment Rule 50 and Rule 59 motion. *See* Fourth Br. at 17 (citing *Northrop v. Katzke*, 12 F. App'x 44, 50 (2d Cir. 2001) (stating that a non-moving party must object to "preserve the issue for appeal")). We do not need to decide this argument, however, because we conclude that the magistrate judge's March 24, 2011 order clearly grants remittitur under Rule 59.

she meant to grant only the Rule 59 motion for remittitur.  Moreover, in the same paragraph that FedEx cites, the magistrate judge stated that the jury award was "against the weight of the evidence"—similar language to that quoted by the magistrate judge in setting out the standard for remittitur.  As a result, we conclude that the magistrate judge granted remittitur pursuant to Rule 59.  And by granting remittitur and not offering Wallace the option of a new trial on the issue of back-pay damages, magistrate judge committed procedural error.  Thus, we REVERSE.

## 2.  Magistrate Judge Impermissibly Re-Weighed Evidence

Despite the above-mentioned procedural error, there remains the question of whether this panel should remand and order the magistrate judge to give Wallace the option of a new trial or remand and order the magistrate judge to enter judgment in Wallace's favor for the full $173,000.  To answer this question, it is necessary to review the magistrate judge's prior decision on remittitur on the merits.  In doing so, we conclude that the magistrate judge abused her discretion by re-weighing the evidence, and thus, we order the magistrate judge to enter judgment in Wallace's favor for $173,000.

A jury's damages "award must stand unless it is (1) beyond the range supportable by proof; or (2) so excessive as to shock the conscience; or (3) the result of a mistake." *Gregory v. Shelby Cnty.*, 220 F.3d 433, 443 (6th Cir. 2000).  Specifically, we have "held that 'a jury verdict will not be set aside or reduced as excessive unless it is beyond the maximum damages that the jury reasonably could find to be compensatory for a party's loss.'" *Farber*, 917 F.2d at 1395 (quoting *Green v. Francis*, 705 F.2d 846, 850 (6th Cir. 1983)).  "A trial court is within its discretion in remitting a verdict only when, after reviewing all evidence in the light most favorable to the awardee, it is convinced that the verdict is clearly excessive[;] resulted from passion, bias, or prejudice; or is so excessive or inadequate as to shock the judicial conscience of the court." *Id.*  Moreover, a "trial court may not substitute its judgment or credibility determinations for those of the jury." *Id.*  And "[the district court] abuses its discretion in ordering either a remittitur or new trial when the amount of the verdict turns upon conflicting evidence and the credibility of witnesses." *Id.* (citations omitted).

In this case, the magistrate judge concluded that a reasonable jury could not find that Wallace was able to work as a paralegal between January 2009 and March 2010. R. 87 at 13–14

(Mag. J. Mar. 24, 2011 Order) (Page ID #2641–42).  For support, the magistrate judge relied upon the testimony of Dr. Morgan and Wallace's own statements.

Dr. Morgan did testify that he "didn't think that [Wallace] would have been able to work effectively" as of January 2009, that he initially assigned her a GAF score of 45, and that he did not believe Wallace could work effectively at her job at FedEx in February 2010.  R. 54 at 32:7–8 (Mar. 30 Trial Tr.) (Page ID #2041); *see also id.* at 32:1–44:22 (Page ID #2041–53).  Additionally, in her depositions, Wallace stated that she was not sure whether she could have worked as a paralegal in October 2008, February 2009, and May 2009.  *See* R. 53 at 198:2–200:3 (Mar. 29 Trial Tr.) (Page ID #1655–57).

If this were all the testimony that the jury heard, we would be inclined to agree with the magistrate judge's remittance of the back-pay award.  But it is not.  The jury also heard Wallace explain her inability to answer FedEx's questions regarding her ability to work on various dates.  *See id.* at 206:8–207:16 (Page ID #1663–64).  Wallace stated:  "I mean, you don't know if you're going to be sick or have a cold or something of that nature."  *Id.* at 206:17–18 (Page ID #1663).  The jury heard Dr. Morgan state that the GAF score was an arbitrary number, that Wallace might have been able to work as a paralegal in April 2009, and that he was unfamiliar with the duties of a paralegal.  R. 54 at 32:13–19 (Mar. 30 Trial Tr.) (Page ID #2041); *id.* at 37:21–23 (Page ID #2046); *id.* at 45:1–9 (Page ID #2054).

Viewing this information in the light most favorable to Wallace, we conclude that it is not clear that the jury could not have credited this additional information and believed that Wallace was capable of working between January 2009 and March 2010.  The magistrate judge's failure to credit this information constitutes a re-weighing of the evidence, and thus, she abused her discretion.  As a result, we order the magistrate judge to enter judgment for Wallace in the amount of $173,000.

## IV.  CONCLUSION

For the reasons stated above, we **REVERSE** the magistrate judge's remittitur decision and **ORDER** the magistrate judge to enter judgment in favor of Wallace in the amount of

$173,000. With regard to FedEx's cross-appeals, we **AFFIRM** the magistrate judge's denial of judgment as a matter of law on all issues.